IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SSCP MANAGEMENT, INC.;<br>and ATHR MANAGEMENT COMPANY,<br>INC., <br><br>    Plaintiffs, <br><br>v. <br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA<br>CASILLAS GUZMAN, in her official<br>capacity as Administrator of the Small<br>Business Administration, <br><br>    Defendants. | Civil Action No. 3:22-CV-02807-X |

**DEFENDANTS' BRIEF IN SUPPORT
OF THEIR SUMMARY JUDGMENT MOTION**

Dated: October 30, 2023

Of Counsel:

JAMES J. GILLIGAN
*Special Litigation Counsel*

INDRANEEL SUR
*Trial Attorney*
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044

Phone:   (202) 514-8488
Fax No.: (202) 616-8470
Indraneel.Sur@usdoj.gov

LEIGHA SIMONTON
*United States Attorney*

Tami C. Parker
*Assistant United States Attorney*
Burnett Plaza, Suite 1700
801 Cherry Street, Unit # 4
Fort Worth, TX 76102-6882
Texas Bar No. 24003946
Telephone: 817-252-5200
Facsimile:  817-252-5458
E-mail: tami.parker@usdoj.gov

*Attorney for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND ...........................................................................................................3

I.     STATUTORY AND REGULATORY BACKGROUND ....................................................3

       A.  SBA, the CARES Act, and the PPP ...........................................................3

       B.  PPP loan forgiveness...................................................................................6

       C.  The First PPP IFR ......................................................................................8

       D.  SBA review of PPP loan forgiveness applications.....................................9

II.    PLAINTIFFS' PPP LOAN FORGIVENESS APPLICATIONS ........................................ 10

       A.  Each Plaintiff sought and received a PPP loan based on self-certification of
           eligibility................................................................................................... 10

       B.  SBA denied loan forgiveness after determining each Plaintiff, despite self-
           certification, was not eligible.................................................................... 11

       C.  The instant action challenging SBA's denial of loan forgiveness to each Plaintiff....... 12

LEGAL STANDARD ................................................................................................... 13

ARGUMENT.............................................................................................................. 14

I.     THE CARES ACT DOES NOT CONTEMPLATE GRANTING FORGIVENESS
       OF LOANS FOR WHICH BORROWERS WERE NOT ELIGIBLE ................................ 14

       A.  The Statutory Scheme As A Whole Makes Clear, And Subsequent Legislation
           Confirms, That PPP Loan Receipt Does Not Automatically Entitle The
           Borrower To Forgiveness And That SBA May Review Borrower Eligibility
           At The Forgiveness Stage........................................................................... 15

       B.  Plaintiffs' Statutory Contention That All PPP Loan Recipients Are
           Automatically Eligible For Forgiveness Suffers From Additional Critical
           Flaws.......................................................................................................... 21

       C.  SBA's Construction Is At Least Reasonable, Warranting Deference............ 26

II.    PLAINTIFFS' RETROACTIVITY CLAIM LACKS MERIT ........................................... 26

       A.  The Loan Review IFR Merely Explained SBA's Statutory Authority And Had
           No Retrospective Effect On Plaintiffs....................................................... 27

B.  Plaintiffs' Contention That They Were Each Induced To Obtain A PPP Loan Is Unavailing ..................................................................................................... 29

III.    ANY RELIEF IN THE NATURE OF AN INJUNCTION MUST BE DENIED ................. 31

CONCLUSION ................................................................................................................. 34

## TABLE OF AUTHORITIES

**CASES**

*Abbott v. Perez*,
   138 S. Ct. 2305 (2018)......................................................................................................33

*Abbott v. United States*,
   562 U.S. 8 (2010) ............................................................................................................18

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) ........................................................................................................33

*Amin v. Mayorkas*,
   24 F.4th 383 (5th Cir. 2022) ...........................................................................................13

*Anderson, Clayton & Co. v. United States*,
   562 F.2d 972 (5th Cir. 1977) .....................................................................................27, 28

*Ardestani v. INS*,
   502 U.S. 129 (1991) ........................................................................................................22

*Asadi v. G.E. Energy (USA), LLC*,
   720 F.3d 620 (5th Cir. 2013) ...........................................................................................18

*Bank Markazi v. Peterson*,
   578 U.S. 212 (2016) ........................................................................................................27

*Blaz v. Belfer*,
   368 F.3d 501 (5th Cir. 2004) ...........................................................................................29

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988) ........................................................................................................27

*Burbridge v. CitiMorgage, Inc.*,
   37 F.4th 1049 (5th Cir. 2022) ..........................................................................................13

*Calcutt v. FDIC*,
   598 U.S. 623 (2023) ........................................................................................................31

*Chevron Oil Co. v. Andrus*,
   588 F.2d 1383 (5th Cir. 1979) .........................................................................................25

*Chevron, U.S.A., Inc. v. NRDC*,
   467 U.S. 837 (1984) ........................................................................................................26

*Cnty. of Maui, Hawaii v. Hawaii Wildlife Fund*,
   140 S. Ct. 1462 (2020)......................................................................................................18

*Culbertson v. Berryhill*,
  139 S. Ct. 517 (2019)..................................................................................................26

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor*,
  45 F.4th 846 (5th Cir. 2022)......................................................................................34

*Dole v. Petroleum Treaters, Inc.*,
  876 F.2d 818 (5th Cir. 1989)......................................................................................21

*Driftless Area Land Convervancy v. Valcq*,
  16 F.4th 508 (5th Cir. 2021).......................................................................................34

*DSE, Inc. v. United States*,
  169 F.3d 21 (D.C. Cir. 1999)........................................................................................4

*Duarte v. Mayorkas*,
  27 F. 4th 1044 (5th Cir. 2022)....................................................................................21

*Enplanar, Inc. v. Marsh*,
  11 F.3d 1284 (5th Cir. 1994)...............................................................................31, 32

*Entergy Corp. v. Riverkeeper, Inc.*,
  556 U.S. 208 (2009) ...................................................................................................26

*Expedient Servs., Inc. v. Weaver*,
  614 F.2d 56 (5th Cir. 1980) ..................................................................................32, 34

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ...................................................................................................19

*Fed. Crop Ins. Corp. v. Merrill*,
  332 U.S. 380 (1947) ...................................................................................................30

*Germain v. US Bank Nat'l Ass'n as Tr. for Morgan Stanley Mortg. Loan T. 2006-7*,
  920 F.3d 269 (5th Cir. 2019) ......................................................................................29

*Gonzales v. Thomas*,
  547 U.S. 183 (2006) ...................................................................................................31

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*,
  559 U.S. 280 (2010) .............................................................................................15, 21

*Greenlaw v. United States*,
  554 U.S. 237 (2008) ...................................................................................................18

*Heckler v. Cmty. Health Servs. of Crawford Cnty. Inc.*,
  467 U.S. 51 (1984) ...............................................................................................30, 31

*Heggestad v. U.S. Dep't of Justice*,
  182 F. Supp. 2d 1 (D.D.C. 2000)................................................................................25

*Henrikson v. Guzik*,
249 F.3d 395 (5th Cir. 2001) ................................................................................................ 19

*In re Gateway Radiology Consultants, P.A.*,
983 F.3d 1239 (11th Cir. 2020) ......................................................................................*passim*

*In re Hidalgo Cty. Emergency Serv. Found.*,
962 F.3d 838 (5th Cir. 2020) ................................................................................................ 31

*In re Springfield Hosp., Inc.*,
618 B.R. 70 (Bankr. D. Vt. 2020), *rev'd and vacated sub nom.*,
*Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403 (2d Cir. 2022) ........................................ 19

*JetPay Corp. v. IRS*,
26 F.4th 239 (5th Cir. 2022) ............................................................................................ 14, 16

*Jones v. Hendrix*,
599 U.S. 465 (2023) .............................................................................................................. 18

*Kennedy v. Mendoza-Martinez*,
372 U.S. 144 (1963) .............................................................................................................. 33

*Knapp v. USDA*,
796 F.3d 445 (5th Cir. 2015) ................................................................................................ 30

*Knight v. United Land Ass'n*,
142 U.S. 161 (1891) .............................................................................................................. 25

*Kovac v. Wray*,
No. 3:18-cv-110-X, 2023 WL 2430147 (N.D. Tex. Mar. 9, 2023) ....................................... 13

*Kucana v. Holder*,
558 U.S. 233 (2010) .............................................................................................................. 22

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) ........................................................................................................ 27, 29

*Levy v. Sterling Holding Co.*,
544 F.3d 493 (3d Cir. 2008) ................................................................................................. 27

*Logan v. United States*,
552 U.S. 23 (2007) ................................................................................................................ 18

*Luminant Generation Co. v. EPA*,
714 F.3d 841 (5th Cir. 2013) ................................................................................................ 26

*Manhattan Gen. Equip. Co. v. Comm'r*,
297 U.S. 129 (1936) .............................................................................................................. 27

*Maracich v. Spears*,
  570 U.S. 48 (2013) ........................................................................................................26

*Martinez v. Mukasey*,
  519 F.3d 532 (5th Cir. 2008) ........................................................................................18

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ......................................................................................................33

*Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*,
  60 F.4th 956 (5th Cir. 2023) .........................................................................................26

*Moore v. LaSalle Mgmt. Co.*,
  41 F.4th 493 (5th Cir. 2022) .........................................................................................13

*Moosa v. INS*,
  171 F.3d 994 (5th Cir. 1999) ........................................................................................30

*Morrow v. Clayton*,
  326 F.2d 36 (10th Cir. 1963) ........................................................................................25

*Mourning v. Family Pub. Serv., Inc.*,
  411 U.S. 356 (1973) ......................................................................................................16

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ................................................................................................14, 16

*Nken v. Holder*,
  556 U.S. 418 (2009) ......................................................................................................33

*N. Haven Bd. of Educ. v. Bell*,
  456 U.S. 512 (1982) ......................................................................................................21

*Office of Personnel Mgmt. v. Richmond*,
  496 U.S. 414 (1990) ................................................................................................29, 30

*Onaghise v. Dep't of Homeland Sec.*,
  No. 3:20-cv-3033-X, 2022 WL 4073344 (N.D. Tex. Sept. 2, 2022)............................13

*Parada v. Garland*,
  48 F.4th 374 (5th Cir. 2022) .........................................................................................21

*Pereira v. Sessions*,
  138 S. Ct. 2105 (2018).............................................................................................22, 23

*Pharaohs GC, Inc. v. U.S. Small Business Admin.*,
  990 F.3d 217 (2d Cir. 2021) ...............................................................................5, 7, 23

*Pierre-Paul v. Barr*,
  930 F.3d 684 (5th Cir. 2019),
  *abrogated in part on other grounds by*
  *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1479-80 (2021) ........................................................ 23

*Ramey & Schwaller, L.L.P. v. Zions Bancorporation NA*,
  71 F.4th 257 (5th Cir. 2023) .............................................................................. 4, 17, 25, 31

*Robertson-Dewar v. Holder*,
  646 F.3d 226 (5th Cir. 2011) ................................................................................... 30, 31

*Roberts v. Sea-Land Servs., Inc.*,
  566 U.S. 93 (2012) ................................................................................................ 14, 16

*Romeo v. United States*,
  462 F.2d 1036 (5th Cir. 1972) ................................................................................. 32, 33

*Shinseki v. Sanders*,
  556 U.S. 396 (2009) ..................................................................................................... 29

*Smith v. Doe*,
  538 U.S. 84 (2003) ....................................................................................................... 27

*Springfield Hosp., Inc. v. Guzman*,
  28 F.4th 403 (2d Cir. 2022) ...................................................................................*passim*

*Sw. Elec. Power Co. v. EPA*,
  920 F.3d 999 (5th Cir. 2019) ......................................................................................... 26

*The Emily*,
  9 Wheat. 381 (1824) ...................................................................................................... 18

*Thorpe v. Housing Auth. of City of Durham*,
  393 U.S. 268 (1969) ...................................................................................................... 16

*United States v. Bloom*,
  112 F.3d 200 (5th Cir. 1997) ................................................................................... 29, 30

*United States v. Johnson*,
  529 U.S. 53 (2000) ....................................................................................................... 21

*United States v. Texas*,
  143 S. Ct. 1964 (2023) .................................................................................................. 34

*Valley Constr. Co. v. Marsh*,
  714 F.2d 26 (5th Cir. 1983) ........................................................................................... 32

*Willoughby v. United States ex rel. U.S. Dep't of the Army*,
  730 F.3d 476 (5th Cir. 2013) ......................................................................................... 32

*Worldcall Interconnect, Inc. v. FCC*,
  907 F.3d 810 (5th Cir. 2018) ........................................................................................29

*Wright v. Allstate Ins. Co.*,
  415 F.3d 384 (5th Cir. 2005) ........................................................................................30

**STATUTES**

5 U.S.C. §§ 551 *et seq.* ...................................................................................................11

5 U.S.C. §§ 701 *et seq.* ...................................................................................................11

5 U.S.C. § 706 ..................................................................................................... 12, 13, 29

8 U.S.C. § 1229b ..............................................................................................................22

11 U.S.C. § 525 ..........................................................................................................19, 21

15 U.S.C. § 632 .................................................................................................................4

15 U.S.C. § 634 ........................................................................................................*passim*

15 U.S.C. § 636 ........................................................................................................*passim*

15 U.S.C. § 636m ......................................................................................................*passim*

15 U.S.C. § 9005 ...............................................................................................................6

15 U.S.C. § 9012 ............................................................................................................6, 8

28 U.S.C. § 2201 ..............................................................................................................32

Administrative Procedure Act,
  79 Cong. Ch. 324, 60 Stat. 237 (1946) .........................................................................12

American Rescue Plan Act of 2021,
  Pub. L. No. 117-2, 135 Stat. 4 (2021) .............................................................................6

Consolidated Appropriations Act, 2021,
  Pub. L. No. 116-260, 134 Stat. 1182 (2020) ...........................................................*passim*

Coronavirus Aid, Releief, And Economic Security Act,
  Pub. L. No. 116-136 (2020)...................................................................................*passim*

Extending Authoritiy For Commitments for the Paycheck Protection Program and Seperating
  Amounts Authorized,
  Pub. L. No. 116-147, 134 Stat. 660 (2020) .....................................................................6

Paycheck Protection Program Flexibility Act,
  Pub. L. No. 116-142, 134 Stat. 641 (2020) ...................................................................31

Paycheck Protection Program and Health Care Enhancement Act,
  Pub. L. No. 116-139, 134 Stat. 620 (2020) ..................................................................6

PPP Extension Act of 20201,
  Pub. L. No. 117-6, 135 Sat. 250 (2021) ......................................................................6

Small Business Act,
  Pub. L. No. 85-536, 72 Stat. 384 (1958) ......................................................................3

**CONSTIUTIONS**

U.S. Const. art. I, § 9 ...............................................................................................29, 30

U.S. Const., art. I, § 10 ..................................................................................................27

**RULES**

Fed. R. Civ. P. 56...........................................................................................................13

**REGULATIONS**

13 C.F.R. § 120.531........................................................................................................31

13 C.F.R. Pt. 121 ............................................................................................................5

13 C.F.R. § 121.301.........................................................................................................4

*Business Loan Program Temporary Changes; Paycheck Protection Program*,
  85 Fed. Reg. 20,811 (Apr. 15, 2020)....................................................................5, 8, 9

*Business Loan Program Temporary Changes; Paycheck Protection Program--Requirements--
  Promissory Notes, Authorizations, Affiliation, and Eligibility*,
  85 Fed. Reg. 23,450 (Apr. 28, 2020)........................................................................5, 8

Buisness Loan Program Temporary Changes; Paycheck Protection Program—SBA Loan Review
  Procedures and Realted Borrower and Lender Responsibilities,
  85 Fed. Reg. 33,010 (June 1, 2020)...........................................................................9

Business Loan Program Temporary Changes; Paycheck Protection Program—Additional
  Eligibility Revisions to First Interim Final Rule,
  85 Fed. Reg. 38,304 (June 26, 2020)...........................................................................7

**OTHER AUTHORITIES**

18 Oxford English Dictionary 950 (2d ed. 1989) .........................................................23

Black's Law Dictionary 1525 (6th ed. 1990) ................................................................23

SBA PPP Lender Application Form 2484,
https://www.sba.gov/document/sba-form-2484-lender-application-form-paycheck-protection-
program-loan-guaranty ...................................................................................................... 9

SBA, PPP Report, Approvals Through 05/01/2021,
https://www.sba.gov/sites/default/files/2021-06/PPP_Report_Public_210531-508.pdf ............... 6

SBA, PPP Report, Approvals Through 06/30/2020,
https://www.sba.gov/sites/default/files/2021-09/PPP Results - Sunday FINAL-508.pdf ............. 9

SBA Press Release No. 20-30 (Apr. 3, 2020),
https://www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-small-businesses-
affected-coronavirus-pandemic-launches ...................................................................... 8

SBA Procedure Notice 5000-812316,
*SBA Guaranty Purchases and Lender Servicing Responsibilities for PPP Loans* (July 15, 2021),
https://www.sba.gov/document/procedural-notice-5000-812316-ppp-guaranty-purchases-charge-
offs-lender-servicing-responsibilities .............................................................................. 10

SBA Standard Operating Procedure, SOP 50 10 5(K),
*Lender & Dev. Co. Loan Programs* (Apr. 1, 2019), https://www.sba.gov/sites/default/files/2019-
02/SOP%2050%2010%205%28K%29%20FINAL%202.15.19%20SECURED%20copy%20past
e.pdf ............................................................................................................................... 3

SBA Standard Operating Procedure, SOP 50 10 6,
*Lender & Dev. Co. Loan Programs* (Aug. 1, 2023), https://www.sba.gov/document/sop-50-10-
lender-development-company-loan-programs ..................................................................... 3

**INTRODUCTION**

To respond to the nationwide economic crisis arising from the coronavirus pandemic, Congress passed and President Trump signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The statute tasked the Small Business Administration ("SBA") with administering hundreds of billions of dollars in federally guaranteed Paycheck Protection Program ("PPP") loans issued in a matter of weeks to millions of American small businesses harmed by the pandemic. The CARES Act limited PPP eligibility, generally, to "small businesses and organizations" that employ not more than "500 employees." The CARES Act also provided for forgiveness of up to the full principal amounts of qualified PPP loans. Structurally, Congress established the PPP not as a standalone statute, but as a supplemental provision to the SBA's existing loan authorities under Section 7(a) of the Small Business Act (codified as amended at 15 U.S.C. § 636(a)).

To obtain a PPP loan from a private lender, each borrower self-certified that it was eligible to participate in the PPP, and the lender assessed the borrower's eligibility relying on that borrower's self-certification. In a June 2020 interim final rule on PPP loan forgiveness, SBA determined that— under the CARES Act itself, and an array of statutes charging SBA with responsibility for auditing and investigating Section 7(a) loans—the agency would, in examining applications for PPP loan forgiveness, assess whether a borrower was eligible for the PPP.

Plaintiffs SSCP Management Inc. ("SSCP") and ATHR Management Company, LLC ("ATHR") each received a PPP loan. In administrative proceedings before SBA, Plaintiffs contested SBA's decision to deny forgiveness of their loans based on their exceeding the business-size limitations in the CARES Act and in SBA's eligibility regulations. In this Court, Plaintiffs do *not* assert that SBA erred in its calculation of size, under which each Plaintiff (together with its affiliates), had 5,330 employees, far above the 500-employee ceiling for PPP loan eligibility. Instead,

Defendants' Brief in Support of their Summary Judgment Motion – Page 1

Plaintiffs' theory is that SBA entirely lacked authority to determine, at the loan forgiveness stage, each Plaintiff's eligibility for its loan, and emphasizes that its lender represented to SBA, at the loan origination stage, that each Plaintiff was eligible for its loan.  Asserting a single cause of action under the Administrative Procedure Act ("APA"), Plaintiffs primarily contend that SBA's forgiveness-stage assessment of eligibility violates the CARES Act. And Plaintiffs secondarily characterize that assessment as "*ex post facto*," apparently seeking to argue that SBA impermissibly engaged in retroactive application of the agency's June 2020 Loan Forgiveness IFR to Plaintiffs' earlier-funded loans.  Both the primary and the secondary strands of Plaintiffs' APA claim are incorrect.

Plaintiffs' primary claim is incorrect because the PPP's provisions, properly considered together as a whole and viewed in combination with subsequent legislation, show that SBA has ample authority at the forgiveness stage to assess a borrower's eligibility for a PPP loan.  A lender's speedy decision to issue a loan, relying on the borrower's self-certifications concerning PPP eligibility, does not preclude SBA, at the forgiveness stage, from reaching a different conclusion about that borrower's  eligibility, in light of SBA's auditing, investigative, and other statutory authorities and responsibilities.  Plaintiffs' contrary position is not only erroneously founded on isolated provisions of the statute, but would seriously undermine the CARES Act by precluding SBA from protecting the fiscal integrity of its Government-backed loan programs, contrary to the evident legislative design for the PPP—including as confirmed by subsequent legislation concerning PPP loans.  It is SBA's interpretation of the CARES Act, not Plaintiffs', that is properly supported by the structure of the statute and its other provisions.

Insofar as Plaintiffs' secondary contention characterizing SBA's action as "*ex post facto*" seeks to invoke decisional law limiting retroactive regulation, that contention also fails because SBA's Loan Forgiveness IFR merely explained what the CARES Act already provided:  that SBA

has authority to review a borrower's eligibility at the loan forgiveness stage. Thus, applying the Loan Forgiveness IFR to Plaintiffs' loans was not retroactive.

At any rate, the sweeping equitable relief that Plaintiffs seek is in large part barred by the Small Business Act, 15 U.S.C. § 634(b)(1), which prohibits relief in the nature of an injunction against SBA. Thus, even if the Court were to find an error of law on either the primary or secondary strands of Plaintiffs' APA claim, the proper course would be (at most) to remand Plaintiffs' forgiveness applications to SBA under the ordinary remand rule.

For those reasons, detailed below, this Court should grant Defendants' motion for summary judgment. [1]

## BACKGROUND

### I.    STATUTORY AND REGULATORY BACKGROUND

#### A.    SBA, the CARES Act, and the PPP

Section 7(a) of the Small Business Act, Pub. L. No. 85-536, 72 Stat. 384 (1958), 15 U.S.C. § 636(a) ("Section 7(a)"), confers authority on SBA to make and guarantee loans to small businesses. Participating private lenders initiate Section 7(a) loans to small businesses, and, when SBA agrees to guarantee a loan, the lender funds and services the loan. SBA Standard Operating Procedure ("SOP") 50 10 6, *Lender & Dev. Co. Loan Programs*, Pt. 1, § A, Ch. 1, at 11.[2] The Small Business Act also authorizes SBA to "make such rules and regulations as" the agency "deems necessary" to implement the loan program. 15 U.S.C. § 634(b)(6); *see id.* § 634(b)(7) (vesting authority to create rules and "take any and all actions . . . when" SBA "determines such actions are necessary or

---

[1] Internal citations and quotation marks are omitted throughout this brief unless noted.

[2] The version of the SOP that took effect Aug. 1, 2023 is available at https://www. sba.gov/document/sop-50-10-lender-development-company-loan-programs. The version of the SOP in effect in April 2020, when Plaintiffs applied for their PPP loans, was SOP 50 10 5(K), which was in effect from February 2019 until August 2023 (available at https://www.sba.gov/sites/default/files/2019-02/SOP%2050%2010%205%28K%29%20FINAL%202.15.19%20SECURED%20copy%20paste.pdf).

desirable in making, servicing, . . . or otherwise dealing with or realizing on loans made under" the Small Business Act). Additionally, § 634(b)(11) authorizes SBA to "make such investigations as" the agency "deems necessary to determine whether a recipient of . . . any assistance under this chapter . . . has engaged . . . in any acts or practices" constituting "a violation of any provision of this chapter[.]"

In general, "a small-business concern . . . shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation." 15 U.S.C. § 632(a)(1).  The Small Business Act also "grants the SBA broad authority to craft general criteria for establishing which entities qualify as small business concerns, as well as to make particularized size assessments." *DSE, Inc. v. United States*, 169 F.3d 21, 25 (D.C. Cir. 1999) (citing, *inter alia*, 15 U.S.C. § 632(a)(2)(A)). Those general criteria include rules that determine when an applicant is subject to control by another business entity, such that the two are affiliated and properly regarded as a single, larger entity (in terms of number of employees, or revenues) for purposes of determining whether the applicant qualifies as an eligible "small" business. *See* 13 C.F.R. § 121.301(f).

"As the COVID-19 pandemic ground economic activity across the country to a near standstill in March 2020, Congress," through the CARES Act, "enacted the Paycheck Protection Program (PPP) to help small businesses keep workers employed during the crisis."  *Ramey & Schwaller, L.L.P. v. Zions Bancorporation NA*, 71 F.4th 257, 258 (5th Cir. 2023).  The CARES Act became law on March 27, 2020.  Pub. L. No. 116-136, 134 Stat. 281.

To authorize the PPP, § 1102(a)(2) of the CARES Act adds a new paragraph (36) to Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a)(36), providing: "[e]xcept as otherwise provided in this paragraph, the [SBA] may guarantee [PPP] covered loans under the same terms, conditions, and processes as a loan made under this subsection," *i.e.*, Section 7(a). *Id.* § 636(a)(36)(B).  Thus, the "PPP was not created as a standalone program but was added into the existing [Section 7(a)]

program, which subjects it to existing conditions and regulations, as well as existing SBA authority."
*Pharaohs GC, Inc. v. U.S. Small Business Admin.*, 990 F.3d 217, 227 (2d Cir. 2021) (quoting *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1256 (11th Cir. 2020)).

The CARES Act sets forth in extensive detail the precise ways in which PPP covered loans *differ* from other Section 7(a) loans. *Id*. § 636(a)(36)(C)-(V). Among those differences, the CARES Act authorizes the SBA to guarantee covered PPP loans to various non-profit organizations, independent contractors, and self-employed individuals, as well as to small business concerns, *id*. § 636(a)(36)(D)(i), (ii); and relaxes size limitations to allow businesses with *as many as* 500 employees (or more, depending on the industry in which they operate) to receive assistance, *id*. § 636(a)(36)(D)(i)(I).

In that regard, the CARES Act also waived certain of the SBA's affiliation rules used to make small business "size" determinations. *Id*. § 636(a)(36)(D)(iv); *see* 13 C.F.R. Part 121. Those affiliation rules "are waived," the CARES Act provided, "with respect to eligibility for a [PPP] loan for," among other entities, "any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System ["NAICS"] code beginning with 72," and "any business concern operating as a franchise that is assigned a franchise identifier code by" SBA. 15 U.S.C. § 636(a)(36)(D)(iv)(I), (II).[3]

Four facets of the CARES Act manifested a direction that SBA move expeditiously to make PPP loans. *First*, the Act initially authorized SBA to guarantee an enormous amount in PPP loans, up to $349 billion, by June 30, 2020, *i.e.*, within just three months. 15 U.S.C. § 636(a)(36)(A)(ii)-

---

[3] A borrower that receives a PPP loan signs a promissory note that specifies an interest rate and the terms for repayment of the funds. *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20,811, 20,813 (Apr. 15, 2020) (interest rate on PPP loans is one percent, and maturity date is in two years); *Business Loan Program Temporary Changes; Paycheck Protection Program--Requirements--Promissory Notes, Authorizations, Affiliation, and Eligibility*, 85 Fed. Reg. 23,450, 23,450-51 (Apr. 28, 2020) (describing requirements for promissory notes).

(iii), (B). *Second*, the Act streamlined Section 7(a) loan-origination requirements for PPP borrowers by, for example, eliminating borrower collateral and personal loan-guarantee requirements. *Id.* § 636(a)(36)(J). *Third*, the Act directed SBA to permit additional qualified lending institutions that were not already accredited Section 7(a) lenders to participate in the PPP and mandated that all PPP lenders be given "delegated authority" to "make and approve" PPP loans without prior SBA review. *Id.* § 636(a)(36)(F)(ii)(I), (iii). *Fourth*, the Act instructed SBA to issue regulations implementing the PPP within just 15 days of the statute's enactment, 15 U.S.C. § 9012, described as "warp speed for regulatory action." *Gateway*, 983 F.3d at 1262.

Congress ultimately authorized SBA to guarantee more than $813 billion in PPP loans and extended the program termination date to June 30, 2021.[4] By then, nearly 12 million PPP loans had been approved. SBA, PPP Report, Approvals Through 05/01/2021.[5]

## B. PPP loan forgiveness

The CARES Act § 1106, as amended, allows eligible recipients of PPP loans to obtain forgiveness of their loans, that is, cancellation of their indebtedness, in whole or in part. 15 U.S.C. § 636m(b)-(d). But "forgiveness" of PPP loans "is neither automatic nor guaranteed." *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 424 (2d Cir. 2022). Rather, the CARES Act limits forgiveness to "eligible recipients" that used the proceeds of their loans used to cover their employee payroll costs and certain mortgage, rent, or utility payments. CARES Act § 1106 (previously codified at 15 U.S.C. § 9005(b) before transfer to § 636m).

---

[4] *See* Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020) (adding $310 billion); Consolidated Appropriations Act, 2021 ("CAA 2021"), Pub. L. No. 116-260, Div. N, § 323(a)(1)(D), 134 Stat. 1182, 2019, (adding $147.45 billion); American Rescue Plan Act, Pub. L. No. 117-2, § 5001(d)(1), 135 Stat. 4, 81 (2021) ($7.25 billion); *see also* Pub. L. No. 116-147, 134 Stat. 660 (2020) (extending program deadline to August 8, 2020); CAA 2021, Div. N, § 343(a) (extension to March 31, 2021); PPP Extension Act, Pub. L. No. 117-6, § 2(a), 135 Stat. 250 (2021) (extension to June 30, 2021).

[5] Available at https://www.sba.gov/sites/default/files/2021-06/PPP_Report_Public_210531-508.pdf.

In particular, the statute provides that "[a]n eligible recipient shall be eligible for forgiveness of indebtedness on a covered loan in an amount equal to the sum of" the specified costs and payments. 15 U.S.C. § 636m(b).  The statute defines an "eligible recipient" as "the recipient of a covered loan." 15 U.S.C. § 636m(a)(10).  For its part, a "covered loan" is "a loan *guaranteed under* section 636(a)(36) of this title."   15 U.S.C. § 636m(a)(1) (emphasis added); *see* CARES Act § 1106(a)(1) ("covered loan" is "loan *guaranteed under* paragraph (36) of section 7(a) of the Small Business Act (15 U.S.C. 636(a)), as added by section 1102" of the CARES Act) (emphasis added). The definition of a "covered loan" thus reiterates the connection between the PPP and the Section 7(a) framework from which it does not "stand[ ]alone."  *Cf. Pharaohs*, 990 F.3d at 227 (quoting *Gateway*, 983 F.3d at 1256).

To obtain forgiveness of a PPP loan, a borrower submits an application to its lender, which makes an initial determination of forgiveness eligibility.  If the lender determines that forgiveness is authorized in whole or in part, it requests SBA payment.  *Id.* § 636m(g); 85 Fed. Reg. 38,304, 38,306 (June 26, 2020).  SBA then remits the appropriate amount to the lender—subject to any SBA review of the loan.  15 U.S.C. § 636m(c)(3); 85 Fed. Reg. at 38,306.

A borrower seeking forgiveness must also meet certain documentation requirements.  *Id*. § 636m(f).  For loans greater than $150,000, the borrower must submit (i) documentation verifying the number of "full-time equivalent employees on payroll and [their] pay rates"; (ii) documentation verifying payments for the other seven categories of covered expenses; (iii) a certification that, *inter alia*, the amount for which forgiveness is sought was used to "retain employees" or make payments for the other seven categories of covered expenses; and (iv) any other documentation SBA determines necessary.  *Id*. § 636m(e).  For loans not exceeding $150,000, the borrower need only submit a one-page certification providing, *inter alia*, "a description of the number of employees" the

borrower was able to retain with the loan, and the estimated amount of the loan spent on "payroll costs." *Id*. § 636m(*l*)(1)(A)(i)(II)(aa), (bb).

Following the CARES Act, the CAA 2021, *see* n.5, *supra*, authorized SBA to guarantee so-called "second draw" PPP loans to certain businesses that had obtained a prior PPP loan under the CARES Act ("first-draw" PPP loans). CAA 2021, Div. N, § 311(a) (adding 15 U.S.C. § 636(a)(37)). Second-draw PPP loans, like first-draw loans, are forgivable in an amount equal to the sum of the borrower's "payroll costs" (excluding amounts relied on by the borrower to claim certain employee-retention tax credits) and seven other categories of "covered" expenses incurred during the covered period. *Id*. § 636(a)(37)(J)(iii)(I).

### C.  The First PPP IFR

As mandated by CARES Act § 1114, 15 U.S.C. § 9012, SBA issued (in consultation with the Department of the Treasury) several interim final rules ("IFRs") implementing the PPP.  SBA posted the first of those (the First PPP IFR, ) on its website on April 2, 2020, the day before the program launched.  *See* 85 Fed. Reg. 23,450 (Apr. 28, 2020) (noting that "[o]n April 2, 2020, [SBA] posted an interim final rule (the First PPP Interim Final Rule)"); *see also* SBA Press Release No. 20-30 (Apr. 3, 2020).[6]   The IFR was then published in the Federal Register on April 15, 2020.  85 Fed. Reg. 20,811.

The First PPP IFR "outline[d] the key provisions of the PPP" by setting forth borrower eligibility and application requirements for PPP loans, 85 Fed. Reg. at 20,812-15 (§ III(2)), and lenders' responsibilities under the streamlined PPP underwriting process, *id.* at 20,815-16 (§ III(3)). Consistent with Congress's intent and the needs of small businesses for immediate aid, the First PPP IFR authorized additional qualified lenders to approve and issue PPP loans, *see* First PPP IFR, 85

---

[6] Available at https://www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-small-businesses-affected-coronavirus-pandemic-launches.

Fed. Reg. at 20,815, 20,816, and established a streamlined PPP loan-origination process, for which the agency (i) waived the usual Section 7(a) underwriting requirements, (ii) allowed a borrower to self-certify its eligibility on PPP loan applications submitted to lenders; (iii) allowed a lender to rely (in good faith) on a borrower's self-certifications, documentation, and calculations; and (iv) allowed a lender to obtain SBA's guarantee for a loan by certifying to SBA that the borrower had made the necessary certifications and had submitted the needed documentation. *Id.* at 20,812, 20,814-16; SBA PPP Application Form 2483, at Certified Administrative Record, Doc. 21-1 (Aug. 9, 2023) ("CAR") 21-2 at 497-98; SBA PPP Lender Application Form 2484.[7]

That streamlining made it possible to disburse almost five million PPP loans by the program's initial June 30, 2020, deadline. SBA, PPP Report, Approvals Through 06/30/2020.[8] Under this process, though, the SBA did not require a lender to forward a borrower's application or supporting documentation to SBA, instead allowing the lender to maintain those records in the lender's files. First PPP IFR, 85 Fed. Reg. at 20,814. As a result, SBA did not—and as a practical matter could not—make independent PPP borrower-eligibility determinations at the loan-origination stage.

### D. SBA review of PPP loan forgiveness applications

The simplified PPP application process, combined with the large number of first-time SBA borrowers and lenders lacking prior experience with SBA rules, created a heightened risk that PPP loans might issue erroneously. To protect the program's fiscal integrity, SBA announced a system of PPP loan review via an Interim Final Rule in June 2020. 85 Fed. Reg. 33,010, 33,012, 33,013 (June 1, 2020) ("Loan Review IFR"). As SBA explained, the Small Business Act authorizes SBA to conduct audits and investigations, 15 U.S.C. § 634(b)(11), and to take such other actions as may

---

[7] Available at https://www.sba.gov/document/sba-form-2484-lender-application-form-paycheck-protection-program-loan-guaranty.

[8] Available at https://www.sba.gov/sites/default/files/2021-09/PPP Results - Sunday FINAL-508.pdf.

be necessary or desirable, *see id.* § 634(b)(6), (7), to ensure borrowers' compliance with Section 7(a) rules and regulations.  85 Fed. Reg. at 33,012.  Under that authority, SBA determined that it would be appropriate to review PPP loans and deny loan forgiveness, in whole or in part, when a borrower's loan documentation (or any other information) indicates that the borrower may be ineligible for its loan or for the full forgiveness amount claimed.  *Id.*[9]

Shortly after SBA initiated that loan-review process, Congress provided, in the CAA 2021, that to obtain loan forgiveness a borrower with  a loan of not more than $150,000 needs to submit only a one-page forgiveness application containing specified certifications.  CAA 2021, Div. N, § 307(a)(3) (adding 15 U.S.C. § 636m(*l*)(1)(A), (B)).  At the same time, however, the CAA 2021 reaffirmed SBA's authority to audit forgiven loans of $150,000 or less, to access relevant records, and to modify the amounts forgiven in cases of fraud, ineligibility, or material noncompliance with applicable requirements.  *Id.* (adding 15 U.S.C. § 636m(*l*)(1)(E)).  Notably, the CAA did not restrict SBA's authority under 15 U.S.C. § 634(b)(7) and (11) to review, audit, or accordingly modify forgiveness of loans over $150,000.

## II.    PLAINTIFFS' PPP LOAN FORGIVENESS APPLICATIONS

### A. Each Plaintiff sought and received a PPP loan based on self-certification of eligibility

The same individual owns the two Plaintiffs.  AR00077, AR00316.  The "principal business" of SSCP was, as of April 3, 2020, "management of franchised restaurants operated by SSCP-affiliated companies that are licensed to use the APPLEBEE'S® and SONIC® trademarks and [by] another SSCP-affiliated company" that owns "the ROY'S® trademark and restaurant concept and

---

[9]  When forgiveness on a PPP loan is denied in full, the borrower must make payments in accordance with the promissory note, *see* Note 3, *supra*, and the lender must continue servicing the loan until it is paid in full or SBA purchases the guaranty.  *See, e.g.*, SBA Procedure Notice 5000-812316, *SBA Guaranty Purchases and Lender Servicing Responsibilities for PPP Loans* (July 15, 2021), *available at* https://www.sba.gov/document/procedural-notice-5000-812316-ppp-guaranty-purchases-charge-offs-lender-servicing-responsibilities.

also operates ROY'S® restaurants itself." AR000003-04. "SSCP lists its NAICS Code as 551112," for "Offices of Other Holding Companies." AR000146. The "principal business" of ATHR was, also as of April 3, 2020, "the provision of payroll services" to several "ATHR-affiliated companies that are APPLEBEE'S® franchisees." AR000007. "[T]he NAICS code for ATHR is 561110," for "Office Administrative Services." AR000146.

Plaintiffs applied on April 3, 2020 for PPP loans, self-certifying their eligibility. AR000017-20, AR000255-58. Their lender approved the loans and on April 17, 2020, once SBA issued the necessary guarantees, disbursed a loan of $496,742.00 to SSCP, and one of $302,197.00 to ATHR. Each Plaintiff applied for forgiveness of its loan on January 8, 2021. AR000057-59, AR000295-97. On review of Plaintiffs' applications, SBA sought and obtained additional information about Plaintiffs and their affiliates. AR000115-24, AR000353-60.

**B. SBA denied loan forgiveness after determining each Plaintiff, despite self-certification, was not eligible**

Via the agency's Office of Capital Access, SBA issued final decisions denying loan forgiveness as to SSCP on February 3, 2022, AR000014-15, and as to ATHR on February 9, 2022, AR000252-53. Those final decisions stated the agency conclusion that each borrower, "or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards," and so "was ineligible" for PPP loans. AR000014, AR000252.

Plaintiffs jointly appealed to SBA's Office of Hearings and Appeals ("OHA") on March 4, 2022. AR000001-14, AR000239-50. Denial of forgiveness was erroneous, they argued, because each was "the recipient of a covered loan" and so "was an 'eligible recipient' for purposes of PPP loan forgiveness." AR000011, AR000249 (quoting 15 U.S.C. § 636(a)(1)(36)(A)(iv)). Additionally, Plaintiffs asserted that their affiliates are "exempt from the SBA's affiliation rules because they are franchises listed in the SBA Franchise Directory and/or have been assigned NAICS Code 722511." AR000011, AR000249.

OHA rejected the challenge on July 6, 2022 in two decisions (one per Plaintiff). AR000228-38, AR000458-67. OHA stated at the outset of its analysis that it lacked authority to invalidate SBA's rules implementing the PPP. AR000236, AR000464. OHA went on to uphold the agency's final decisions, concluding that although each Plaintiff had one or more affiliated entities that could claim the waiver of the affiliation rules by virtue of their franchise directory listing or their NACIS code, *see* 15 U.S.C. § 636(a)(36)(D)(iv)(I), (II), neither Plaintiff entity properly benefited from a waiver, given that, under the statute, each borrower must meet the waiver requirements based on its own characteristics and not those of its affiliates. AR000237, AR000466. And without a waiver, neither Plaintiff was sufficiently "small" to be eligible for the PPP: Under the calculation OHA sustained, SSCP and ATHR, together with their affiliates, had 5,330 employees, which "far exceeds [the] 500" employee ceiling for PPP loan eligibility. AR000238, AR000466.

### C. The instant action challenging SBA's denial of loan forgiveness to each Plaintiff

Plaintiffs' Complaint in the instant action asserts a single count under the Administrative Procedure Act (APA), 60 Stat. 237 (5 U.S.C. §§ 551 *et seq*., 701 *et seq*.). Compl. ¶¶ 62-79; 5 U.S.C. § 706(2)(A), (C). In this Court, although Plaintiffs aver that the total number of SSCP and ATHR employees was 39, they do not challenge SBA's calculation of Plaintiffs' size *based on the affiliation rules*. They aver that some of Plaintiffs' affiliates qualify for a waiver of the affiliation rules, but *not* that either Plaintiff itself qualified for such a waiver. Compl. ¶¶ 39-40.

Instead, purporting to adhere to the "plain text" of the CARES Act, Compl. ¶¶ 20, 49, 68-69, the Complaint primarily avers that SBA lacked statutory authority to deny the forgiveness application given that Plaintiffs' lender had allegedly found them eligible for their PPP loans before disbursing the funds in April 2020, Compl. ¶¶ 49, 64, 69. The Complaint secondarily avers that SBA's denial of loan forgiveness was an impermissibly "*ex post facto*" agency action. They contend that denying forgiveness was impermissibly retroactive, in that, when Plaintiffs obtained their PPP

loans, they allegedly lacked notice that SBA could later reject the eligibility characterizations underpinning those loans. *See id.*

As relief for the alleged APA violation, Plaintiffs seek an order that would, *inter alia*, (a) "[d]eclare that" the challenged SBA decisions denying Plaintiffs' forgiveness applications are invalid; (b) "[d]eclare that any SBA regulations . . . purporting to authorize . . . an *ex post facto* eligibility determination" are invalid; (c) "[h]old unlawful, vacate, and set aside"—in addition to the challenged SBA decisions against Plaintiffs, "any SBA regulations" underlying those decisions; "and" (d) "[r]emand this matter" to SBA "with instructions to issue new final loan forgiveness decisions" predicated on the conclusion that Plaintiffs are "eligible for loan forgiveness." *See* Compl., Prayer for Relief.

## LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Burbridge v. CitiMortgage, Inc.*, 37 F.4th 1049, 1051 (5th Cir. 2022). To obtain summary judgment, a defendant need only point to the absence of evidence of an essential element of a plaintiff's claim. *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 502 (5th Cir. 2022).

Summary judgment is an appropriate vehicle for deciding an APA claim seeking judicial review of agency action alleged to be "arbitrary" or "capricious" or "in excess of" the agency's statutory authority. *See* 5 U.S.C. § 706(2)(A), (C). In such a case, the District Court sits, not as initial factfinder, but as an "appellate tribunal" to review the legality of the agency's final action based on the administrative record. *Kovac v. Wray*, No. 3:18-cv-110-X, 2023 WL 2430147 at *3 (N.D. Tex. Mar. 9, 2023) (Starr, J.); *see Onaghise v. Dep't of Homeland Sec.*, No. 3:20-cv-3033-X, 2022 WL 4073344 at *1 (N.D. Tex. Sept. 2, 2022) (Starr, J.) (citing *Amin v. Mayorkas*, 24 F.4th 383, 391 (5th Cir. 2022)).

**ARGUMENT**

When the provisions of the CARES Act concerning loan forgiveness are read in the context of the CARES Act as a whole, including amendments made in subsequent legislation, they make clear, first, that only eligible borrowers of PPP loans may be granted forgiveness of those loans, and second, that SBA has ample statutory authority to decide at the loan forgiveness stage that a borrower is not eligible for the PPP, even though the lender approved the loan based on the borrower's self-certification of eligibility..  Plaintiffs' contrary statutory and retroactivity arguments are incorrect. Here, it is SBA, and not Plaintiffs, that has properly read the statutory terms "in [their] context and with a view to [their] place in the overall statutory scheme." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007); *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012); *JetPay Corp. v. IRS*, 26 F.4th 239, 241-42 (5th Cir. 2022).  Moreover, and in any event, the relief Plaintiffs seek in the nature of an injunction against SBA is unavailable under the controlling Small Business Act provision forbidding relief of that kind .  Summary judgment in favor of SBA is therefore warranted.

**I.    THE CARES ACT DOES NOT CONTEMPLATE GRANTING FORGIVENESS OF LOANS FOR WHICH BORROWERS WERE NOT ELIGIBLE**

SBA denied forgiveness of Plaintiffs' PPP loans because the agency concluded that SSCP and ATHR were not eligible for such loans, given that, considered together with their affiliates, they each exceeded the applicable size-limit on eligibility of 500 employees.  AR000238, AR000466.  In this Court, Plaintiffs do not contest the merits of SBA's size determination.  Instead, Plaintiffs' central contention is that SBA lacks statutory authority to determine that they are not eligible for PPP loans given that their lender characterized each Plaintiff as eligible for such a loan. Compl. ¶¶ 49, 64, 69. Plaintiffs' position is that once a lender makes a PPP loan, that loan represents a decision that the

borrower is eligible for the loan, and SBA thereafter is "statutorily precluded" from denying loan forgiveness, even when the agency concludes that the borrower is not eligible. Compl. ¶ 23. Each Plaintiff calls itself "the recipient of a covered loan" and on that basis alone asserts entitlement to forgiveness. Compl. ¶¶ 49, 64, 69. So Plaintiffs' theory is that a lender's characterization, based on the borrower's self-certification for a PPP loan, *automatically* means the borrower is eligible for forgiveness (in an amount dependent on how the borrower spent the loan proceeds)—and that SBA cannot "reexamin[e]" the prior eligibility characterization. Compl. ¶¶ 21, 23, 49.

But that theory is incorrect. The governing statutes do not foreclose SBA from concluding, at the loan forgiveness stage, that the borrower is not eligible for the PPP loan it received. To the contrary, the CARES Act itself, and subsequent enactments extending and confirming SBA's authority to administer the PPP, provide that mere receipt of a PPP loan does not ipso facto entitle the borrower to forgiveness. Rather, the statutes limit forgiveness eligibility to borrowers that were eligible in the first place to receive their PPP loans, and thus require SBA to deny loan forgiveness if it ascertains that the borrower was not eligible for the PPP loan. That is so even though the lender, relying on the borrower's self-certifications, characterized the borrower as eligible for the loan when the lender issued the loan. Plaintiffs' contrary position is flawed because it views the definitions of "eligible recipient" and "covered loan" in 15 U.S.C. § 636m in isolation, without regard for the statutory scheme as a whole. *See Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 289-90 (2010) ("Courts have a duty to construe statutes, not isolated provisions.").

**A. The Statutory Scheme As A Whole Makes Clear, And Subsequent Legislation Confirms, That PPP Loan Receipt Does Not Automatically Entitle The Borrower To Forgiveness And That SBA May Review Borrower Eligibility At The Forgiveness Stage**

SBA has correctly comprehended the statutory phrases "eligible recipient" and "covered loan" in 15 U.S.C. § 636m, by "read[ing]" them "in [their] context and with a view to [their] place

Defendants' Brief in Support of their Summary Judgment Motion – Page 15

in the overall statutory scheme." *Home Builders*, 551 U.S. at 666; *Roberts*, 566 U.S. at 101; *JetPay*, 26 F.4th at 241-42.  By contrast, Plaintiffs' statutory authority contention is unsupported by at least three key aspects of the text in light of the "overall statutory scheme," and is therefore incorrect.

*First*, Plaintiffs' interpretation, by requiring SBA to deem eligible for forgiveness even those loans that the agency learns, through appropriate investigation at the forgiveness stage, were made to borrowers actually ineligible for the PPP, cannot be reconciled with the CARES Act's placement of the PPP within Section 7(a) and the corresponding fiscal integrity provisions of the Small Business Act.

For example, the Eleventh Circuit held in *Gateway* that the requirement of the Small Business Act,  15 U.S.C. § 636(a)(6), that  "[a]ll loans made under" Section 7(a) "shall be of … sound value," also applied to the PPP, thus authorizing an SBA rule barring PPP loans to borrowers in bankruptcy. As the Eleventh Circuit observed: "Congress knew how to suspend or render inapplicable to PPP loans the traditional § 7(a) requirements when it wanted to do so, and it did that with some of the requirements. But not the sound value requirement." *Gateway*, 983 F.3d at 1257.  Similarly, here, among the provisions Congress did not "suspend or render inapplicable to PPP loans," *id.*, is § 634(b)(11), authorizing SBA to "make such investigations as" the agency "deems necessary to determine whether a recipient of . . . any assistance under this chapter . . . has engaged . . . in any acts or practices" violating any Section 7(a) provision—including, necessarily, the PPP's limit on size eligibility. [10] And also among the provisions Congress did not "suspend or render inapplicable to PPP loans," is § 634(b)(7), which vests authority in SBA to create rules and "take any and all actions . . . when" SBA "determines such actions are necessary or desirable in making, servicing, . .

---

[10] *Cf. Mourning v. Family Pub. Serv., Inc.*, 411 U.S. 356, 369 (1973) ("[w]here the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' . . . the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.'") (quoting *Thorpe v. Housing Auth. of City of Durham*, 393 U.S. 268, 280-81 (1969)).

. or otherwise dealing with or realizing on loans made under" the Small Business Act, such as recouping improvidently issued loans.

As the Eleventh Circuit further explained, the CARES Act directed SBA to craft a program at "warp speed," 983 F.3d at 1262, requiring lenders to review millions of applications and SBA to issue millions of guarantees in a matter of weeks. To that end, SBA's interpretation of the CARES Act allows lenders to rely on borrower self-certifications when originating PPP loans "to help small businesses keep workers employed *during the crisis*." *Ramey & Schwaller*, 71 F.4th at 258 (emphasis added). But, at the forgiveness stage, it preserves SBA's flexibility to make inquiries into borrowers' eligibility, and, as appropriate, to deny forgiveness when the agency determines the borrower was ineligible.

For example, where a borrower's self-certifications contained omissions or misrepresentations (whether innocent or intentional) on which a lender relied in characterizing the borrower as eligible at the loan origination stage, and SBA learns of those omissions or misrepresentations, such as through appropriate investigation at the forgiveness stage, nothing in the CARES Act indicates SBA should be prevented from acting on the results of such an investigation and declining forgiveness to account for the ineligibility. In that example, the lender, using the streamlined process SBA crafted to meet the CARES Act's high-speed lending imperative to meet "the crisis," *Ramey & Schwaller*, 71 F.4th at 258, may not have detected the omissions or misrepresentations. *See id.* at 259-60 (noting SBA denied forgiveness where, after bank disbursed PPP loan to law firm, bank learned, in assessing applications by firm's principal for additional loans, that criminal proceedings against principal rendered law firm ineligible for PPP). But in such a situation, Plaintiffs' theory would strangely *preclude* SBA from denying forgiveness to the ineligible borrower, thereby licensing omissions or misrepresentations—including even intentional misrepresentations (such as those perpetrating fraud). Plaintiffs' position would unacceptably

undermine the integrity of SBA's lending programs and flout the evident legislative design, which located the PPP within Section 7(a) of the Small Business Act while leaving in place SBA's investigative, auditing, and other responsibilities from the agency's pre-existing programs. *See Cnty. of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462, 1473-74 (2020) (rejecting as "unreasonable" an interpretation of statute that "would . . . create a serious loophole in the [regulatory] regime") (citing, *inter alia*, *The Emily*, 9 Wheat. 381, 390 (1824)).  The CARES Act, like any other statute, "should be construed to avoid" such an "absurd result."  *See Martinez v. Mukasey*, 519 F.3d 532, 544 (5th Cir. 2008).

Plaintiffs' argument is thus incompatible with the agency's statutory responsibilities to investigate and to maintain the financial integrity of its loan programs, including the PPP.  That is a critical deficiency in Plaintiffs' argument.   Courts, after all, "are disinclined to say that what Congress imposed with one hand . . . it withdrew with the other." *Abbott v. United States*, 562 U.S. 8, 27 (2010) (quoting *Logan v. United States*, 552 U.S. 23, 35 (2007)). "We generally 'resist attributing to Congress an intention to render a statute so internally inconsistent.'" *Jones v. Hendrix*, 599 U.S. 465, 479 (2023) (quoting *Greenlaw v. United States*, 554 U.S. 237, 251 (2008)); *see Asadi v. G.E. Energy (USA), LLC*, 720 F.3d 620, 622 (5th Cir. 2013) ("[I]f possible [courts] interpret provisions of a statute in a manner that renders them compatible, not contradictory.").  SBA's interpretation properly adheres to those teachings.

*Second*, the PPP is a loan program, not a grant program. That is what the Second Circuit concluded in *Springfield Hospital*, 28 F.4th at 423-28. But Plaintiffs' argument that obtaining a PPP loan automatically renders the borrower eligible for forgiveness of that loan reflects the view—espoused in some lower court decisions predating *Springfield Hospital*—that PPP funds are "grants,"

not loans.[11] *Springfield Hospital* shows that characterization is incorrect, and that it does not address "the structure and language of the statute and as a whole." *Henrikson v. Guzik*, 249 F.3d 395, 398 (5th Cir. 2001). And Plaintiffs' argument would not be "coherent" or "harmonious" with the PPP's nature as a loan program, rather than a grant program, flouting the obligation to "interpret the statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into an harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).

*Springfield Hospital* concerned SBA's rule providing that PPP loans should not be made to applicants in bankruptcy. A debtor challenged the policy and a bankruptcy court ruled the policy contrary to a Bankruptcy Code section prohibiting discrimination based on bankruptcy status in the Government's provision of "a license, permit, charter, franchise, or other similar grant." 11 U.S.C. § 525(a). But the Second Circuit upheld SBA's determination. Based on a comprehensive examination of the CARES Act, the Second Circuit "conclude[d] that the PPP is, in substance and in form, a loan program that is not covered under" the pertinent Bankruptcy Code section. 28 F.4th at 423. The Second Circuit began by recognizing that the CARES Act "placed the PPP within" Section 7(a), alongside a provision that "authorized" SBA to "adopt the 'same terms, conditions, and processes' for PPP loans as for 7(a) loans." *Id.* Next, because the debtor's challenge to SBA's rule "so heavily relie[d]" on the debtor's assertion that the "forgiveness mechanism" made the PPP a "grant" program—an assertion echoed by Plaintiffs here—the Second Circuit turned to the statutory provisions concerning forgiveness, which "do[] not automatically convert PPP funds from loans into grants." *Id.* at 424. "The CARES Act," the court of appeals noted, "uses the word 'loan' approximately 75 times when describing the PPP." *Id.* Furthermore, loan "forgiveness is neither automatic nor guaranteed," the court concluded, noting that forgiveness requires a borrower to apply

---

[11] *See In re Springfield Hosp., Inc.*, 618 B.R. 70, 90 (Bankr. D. Vt. 2020), *rev'd and vacated sub nom. Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403 (2d Cir. 2022).

for that benefit, which would "only be granted if specified criteria are met," and which is subject to "several additional conditions." *Id.* "A forgiveness option," the Second Circuit summed up, "favorable as it is, cannot alter the structure of what a loan forgiveness program fundamentally is— namely, a program to forgive loans." *Id.*

The Second Circuit's analysis shows why the PPP funds are correctly characterized as a loan and not a grant. Forgiveness is not automatic, *Springfield Hosp.*, 28 F.4th at 424, refuting the characterization of PPP funds as a grant that underpins Plaintiffs' account of the statute and their assertion that every business that received PPP funds must be deemed eligible for purposes of forgiveness.

*Third*, Plaintiffs' position ignores subsequent enactments clarifying SBA's PPP loan administration authorities, including as to loan forgiveness, reflecting legislative endorsement of SBA's approach to loan forgiveness.

In particular, *after* the Loan Review IFR announced SBA's determination, including under its longstanding Section 7(a) investigative authority, that it would examine eligibility at the forgiveness stage, the same Congress that enacted the CARES Act enacted the CAA 2021, which allowed a borrower with a loan of not more than $150,000 to submit only a one-page forgiveness application containing specified certifications. CAA 2021, Div. N, § 307(a)(3) (adding 15 U.S.C. § 636m(l)(1)(A), (B)). Yet the CAA 2021 nevertheless permits SBA to conduct audits of forgiven loans of $150,000 or less, to access relevant records, and to modify the amounts forgiven in cases of fraud, ineligibility, or material noncompliance with applicable requirements. *Id.* (adding 15 U.S.C. § 636m(l)(1)(E)). And the CAA 2021 did *not* restrict SBA's authority under 15 U.S.C. § 634(b)(7) and (11) to review, audit, or accordingly modify forgiveness of loans *over* $150,000.

Legislative awareness of the Loan Review IFR is properly assumed: "Congress can be presumed to be aware of relevant administrative interpretations when reenacting or amending a

statute[.]" *Duarte v. Mayorkas*, 27 F. 4th 1044, 1059 (5th Cir. 2022). The CAA 2021 is thus properly understood as sustaining SBA's conclusion that it has statutory authority to conduct an assessment of eligibility at the forgiveness stage.  Importantly, the CAA 2021 did not alter SBA's forgiveness assessment framework except as to particular features of loans not exceeding $150,000, so for loans exceeding that amount (including each Plaintiff's loan), the correct inference is that Congress agreed with SBA's approach. That is because, "[w]hen Congress provides exceptions in a statute . . . [t]he proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000); *Parada v. Garland*, 48 F.4th 374, 377 (5th Cir. 2022); *see also N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535 (1982) ("Where an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned."); *Dole v. Petroleum Treaters, Inc.*, 876 F.2d 818, 822 (5th Cir. 1989).

In a similar vein, the Second Circuit looked to subsequent legislation to confirm the conclusion in *Springfield Hospital* that SBA's policy barring PPP loans to debtors in bankruptcy aligned with the judgment of Congress.  *See* 28 F.4th at 426-27. The Second Circuit noted that the CAA 2021 amended the Bankruptcy Code's pertinent anti-discrimination provision, 11 U.S.C. § 525(a), "to include some provisions of the CARES Act, but not others," and that sustained "the clear inference that Congress decided *not* to extend" the anti-discrimination requirement's "protections to any portion of the [CARES] Act" (including the PPP), "*other than* those expressly identified in the new" § 525(d).  *Id.* at 427 (emphasis added).

B. **Plaintiffs' Statutory Contention That All PPP Loan Recipients Are Automatically Eligible For Forgiveness Suffers From Additional Critical Flaws**

Additional deficiencies undercut the two main pillars of Plaintiffs' statutory argument.

*First*, Plaintiffs err in contending (Compl. ¶ 20) that disbursement of PPP loan funds by each lender made each Plaintiff "the recipient of a covered loan" such that it necessarily meets the definition of an "eligible recipient" codified at 15 U.S.C. § 636m(a)(10).

A "covered loan," CARES Act § 1106(a)(1) provides, is a "loan *guaranteed under* paragraph (36) of section 7(a) of the Small Business Act (15 U.S.C. § 636(a)), as added by section 1102" of the CARES Act (emphasis added). *See* 15 U.S.C. § 636m(a)(1) (as codified, "covered loan" means "a loan *guaranteed under* section 636(a)(36) of this title") (emphasis added). But even assuming, *arguendo*, that it were permissible to make sense of the statute by reading *only* the definitions on which Plaintiffs have concentrated "in isolation," *cf. Graham Cnty.*, 559 U.S. at 289-90, Plaintiffs inexplicably breeze past that emphasized phrase ("guaranteed under"). Plaintiffs thus ignore that "under" is a word of "many dictionary definitions," and that "must draw its meaning from its context." *Ardestani v. INS*, 502 U.S. 129, 135-36 (1991); *see also Kucana v. Holder*, 558 U.S. 233, 245 (2010) ("The word 'under' is chameleon[.]").

The Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), shows how the phrase "guaranteed under" matters here. *Pereira* concerned a statutory rule (the stop-time rule) for calculating a noncitizen's "continuous physical presence" in the United States for purposes of deciding eligibility for a type of immigration relief (cancellation of removal). The statute, 8 U.S.C. § 1229b(d)(1)(A), provides that "any period of . . . continuous physical presence" is "deemed to end . . . when the alien is served a notice to appear *under* section 1229(a)," where the notice-to-appear provision required specification of, *inter alia*, "[t]he time and place at which the [removal] proceedings will be held," § 1229(a)(1)(G)(i). The Supreme Court rejected the Government's position that a notice to appear lacking the "time and place" of a removal proceeding counted as a "notice to appear *under*" § 1229(a) for purposes of the stop-time rule, concluding instead that "the word 'under,' is best understood to mean 'in accordance with' or 'according to,'" because "it

connects" the "trigger in § 1229b(d)(1) to a 'notice to appear' that contains the enumerated time-and-place information described in § 1229(a)(1)(G)(i)."  *Pereira*, 138 S. Ct. at 2117 (quoting 18 Oxford English Dictionary 950 (2d ed. 1989) and Black's Law Dictionary 1525 (6th ed. 1990)). That is, the "word 'under' provides the glue," the Court remarked, "that bonds the stop-time rule to the substantive time-and-place requirements mandated by § 1229(a)."  *Id.*  And the Court went on to decide that a notice that did not comply with the requirement to specify the time and place of removal proceedings did not "trigger" the stop-time rule.  *See id.* at 2117-18; *see also Pierre-Paul v. Barr*, 930 F.3d 684, 689 (5th Cir. 2019) (statutory use of "under" was "key" to holding in *Pereira*), *abrogated in part on other grounds by Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1479-80 (2021).

For purposes of forgiveness, as in *Pereira*, here, the word "under" "provides the glue" that "connects" the loan forgiveness requirements in CARES Act § 1106 with the loan origination provisions in CARES Act § 1102, and necessarily with Section 7(a) of the Small Business Act, in which the CARES Act located the PPP.  *See Pharaohs*, 990 F.3d at 227; *Gateway*, 983 F.3d at 1256.  Under the reasoning of *Pereira*, a PPP loan that a borrower has obtained via an *erroneous* eligibility characterization is *not* "guaranteed under" 15 U.S.C. § 636(a), for purposes of forgiveness, because, regardless whether the ineligibility stems from a violation of a statutory eligibility requirement or a regulatory one, an ineligible borrower's loan is not "in accordance with" or "according to" the controlling statutes and SBA's authoritative regulations interpreting those statutes.  *Cf. Pereira*, 138 S. Ct. at 2117.  So an ineligible business that obtains a loan may be a borrower, but it is *not* a "recipient of a covered loan," *see* 15 U.S.C. § 636m(a)(10) (defining "eligible recipient" for forgiveness purposes), because due to the ineligibility, the loan is not one "guaranteed under" the statute, for forgiveness purposes.  In other words, Plaintiffs purport to argue from what they the call the "plain text"—without giving any meaning to the context-dependent term "guaranteed under"—that *all* PPP loans made, regardless of actual borrower eligibility, are "covered

Defendants' Brief in Support of their Summary Judgment Motion – Page 23

loans" that "entitle" borrowers to forgiveness. Compl. ¶¶ 19-23, 49, 68-69. But the *Pereira* analysis shows how that argument, even on its own terms, is incomplete (at best). Plaintiffs' inattention to the key phrase "guaranteed under" is yet another indication that they fail to support their APA challenge with a reading of the CARES Act *as a whole*. Indeed, as explained above, Plaintiffs' position is incompatible with the statute as a whole, because, among other things, that position would unacceptably preclude SBA from protecting the integrity of the PPP via its auditing, investigative, and other statutory authorities regarding the handling of Section 7(a) loans.

*Second*, Plaintiffs err in relying (Compl. ¶¶ 15-16) on § 636(a)(36)(F)(ii)(I), which "delegated" certain PPP loan making functions to private lenders. As is often true with other forms of Section 7(a) lending, eligible borrowers obtained PPP loans by filing applications with private lending institutions, which lend their own funds to qualifying borrowers, subject to an SBA guarantee. *See, e.g.*, 15 U.S.C. § 636(a)(36)(F)(ii)(II). And the CARES Act did specify certain characteristics for lenders to "consider" in "evaluating the eligibility of" PPP applicants for the purpose of making loans. *Id.*

But the statute does not support Plaintiffs' argument that, once a lender decided to issue a PPP loan (relying on a self-certification of eligibility by the borrower), such a decision precluded SBA from reaching a different eligibility conclusion later in the life cycle of the loan, namely at the forgiveness stage. That notion is untenable given the numerous statutes described above, such as Section 634(b)(7) and (11), charging SBA with the responsibility to investigate, audit, and take needed remedial actions regarding Section 7(a) loans—statutes Congress left in place as to PPP loans. The delegation did not purport to override any of those statutes.

Nor is Plaintiffs' argument consistent with background principles concerning government delegations of authority to subordinate agency personnel *within* agencies (even assuming, *arguendo*, as Plaintiffs appears to assume, that PPP lenders functioned as SBA delegates, *i.e.* subordinates, for

Defendants' Brief in Support of their Summary Judgment Motion – Page 24

purposes of loan making). Where government agencies are concerned, courts have long traditionally understood that "the head of an administrative agency has the power to review and revise acts of subordinates where, as here, the powers in question are vested in the subordinate under the supervision and direction of the superior or the power to administer is vested in the superior." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1388 (5th Cir. 1979) (quoting *Morrow v. Clayton*, 326 F.2d 36, 45-46 (10th Cir. 1963)) (in turn citing *Knight v. United Land Ass'n*, 142 U.S. 161, 176-82 (1891)). Thus, the "head of an agency retains the authority to make final decisions for the agency even if he or she delegates the authority to make these decisions to his or her subordinates." *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 9-10 (D.D.C. 2000); *see id.* at 10 (concluding authorization of subordinate "to take certain actions does not deprive his superiors of their authority to make final decisions for the agency in certain cases"). A contrary holding "would create havoc in the administration of our laws." *Andrus*, 588 F.2d at 1388. Those general principles of supervision of delegated functions refute Plaintiffs' assertion that, simply because the CARES Act delegated loan origination responsibilities to private lenders, SBA lacks authority to "reexamin[e]" (Compl. ¶ 21, 23, 49) decisions the lenders made to issue PPP loans.

Compounding the errors described above, Plaintiffs' effort to preclude SBA from reaching its own conclusion about eligibility at the forgiveness stage is also irreconcilable with "the crisis" to which the CARES Act responded. *Ramey & Schwaller*, 71 F.4th at 258. The CARES Act reflects legislative understanding that at the loan origination stage, SBA lacked time or resources sufficient to investigate or audit each lender's decision to issue a PPP loan, given the mandate to make PPP loans quickly to address the economic crisis stemming from the coronavirus in 2020. Plaintiffs' failure to account for the emergency context further hobbles their argument.

\* \* \*

In short, it is SBA's interpretation of the CARES Act, not Plaintiffs', that is properly "supported by 'the structure of the statute and its other provisions,'" *Culbertson v. Berryhill*, 139 S. Ct. 517, 522 (2019) (quoting *Maracich v. Spears*, 570 U.S. 48, 60 (2013)).

### C. SBA's Construction Is At Least Reasonable, Warranting Deference.

At a minimum, it would be erroneous to conclude, as Plaintiffs contend, that the CARES Act provisions on which Plaintiffs myopically concentrate *unambiguously* require denying SBA the authority to examine eligibility at the forgiveness stage. For the reasons discussed above, SBA's construction of the statute is  at least a permissible one, warranting judicial deference under the two-step framework of *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984).[12]

## II.    PLAINTIFFS' RETROACTIVITY CLAIM LACKS MERIT

Although Plaintiffs do not contest that they each exceeded the size limit for PPP eligibility, Plaintiffs maintain that SBA acted contrary to law by retroactively applying the Loan Review IFR

---

[12] At Step One, applying the "traditional tools of statutory construction," without deference to the agency, *Chevron*, 467 U.S. at 843 n.9, the court must determine "whether Congress has directly spoken to the precise question at issue," *id.* at 842. If so, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. If "the statute is silent or ambiguous with respect to the specific issue," then the court proceeds to Step Two, where the question "is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843; *Luminant Generation Co. v. EPA*, 714 F.3d 841, 852 (5th Cir. 2013). The agency "view governs if it is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed most reasonable by the courts." *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009); *see Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1028 (5th Cir. 2019). A "court may not substitute its own construction of a statutory provision for a reasonable interpretation made by" the agency. *Sw. Elec.*, 920 F.3d at 1014 (quoting *Chevron*, 467 U.S. at 843). But the court may conclude that the agency interpretation is reasonable under *Chevron* without needing to resolve whether it is the "*most* reasonable" one, or whether some other interpretation also would have been reasonable. *Entergy*, 556 U.S. at 218; *see Sw. Elec.*, 920 F.3d at 1028; *cf. Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 963 n.3 (5th Cir. 2023) (in this circuit *Chevron* governs "until and unless . . .  overruled").

to conduct an "*ex post facto*" eligibility review of Plaintiffs' loans.  *See* Compl. ¶¶ 23, 41-42, 47-48, 49, 50, 64, 69, 74-76.  Such a contention is incorrect.[13]

The Loan Review IFR simply explained what the CARES Act and the Small Business Act already provided, namely, (i) that to obtain loan forgiveness applicants had to be eligible for their PPP loans in the first place, and (ii) that SBA had authority to conduct necessary and appropriate inquiries to ensure recipients' compliance with that requirement.  Stating only what pre-existing law already provided, the Loan Review IFR had no retroactive effect when applied to Plaintiffs' PPP loans.  And whether viewed through the lens of retroactivity,  or (as Plaintiffs' allegations suggest) equitable estoppel, Plaintiffs' retroactivity argument should be rejected.

### A.    The Loan Review IFR Merely Explained SBA's Statutory Authority And Had No Retrospective Effect On Plaintiffs

Although retroactive rulemaking by an agency is presumptively unauthorized, *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988), a rule is not retroactive if it merely "clarifies what the language of the statute was intended to convey[.]"  *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 985 n. 30 (5th Cir. 1977) (citing *Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 135 (1936)).  The question turns on "how the new regulation stands in relation to prior law or policy," *i.e.*, whether it "clarif[ies] uncertain law" or "make[s] new law."  *Id.*; *see Levy v. Sterling Holding Co.*, 544 F.3d 493, 506 (3d Cir. 2008) (citing cases).  Under this standard, application of the Loan Review IFR to Plaintiffs' loans was not retroactive.

*First*, the Loan Review IFR informed borrowers of SBA's understanding that by "eligible recipient" paragraph 636m(a)(10) meant a recipient that was eligible for its loan under clause

---

[13]  SBA's forgiveness-stage assessment of eligibility is not subject to the Ex Post Facto Clause, U.S. Const., art. I, § 10, cl. 1., because Plaintiffs do not allege that SBA's action was in any way punitive.  *See Smith v. Doe*, 538 U.S. 84, 92 (2003).  The Complaint's  use of the term "*ex post facto*" instead appears to signify that Plaintiffs are asserting that SBA engaged in impermissibly "retroactive" agency action.  *See, e.g.*, *Bank Markazi v. Peterson*, 578 U.S. 212, 228-29 (2016) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267 (1994)).

636(a)(36)(A)(iv).  85 Fed. Reg. at 33,012.  Because the Loan Review IFR did no more than explain the meaning of the CARES Act's pre-existing definition of "eligible recipient" as SBA had (correctly) construed it, and made no "new law," *Anderson, Clayton & Co.*, 562 F.2d at 985 n.30, the rule's application to Plaintiffs' PPP loans had no retrospective effect.

*Second*, the Loan Review IFR advised borrowers of SBA's pre-existing authority under the Small Business Act "to conduct investigations to determine whether a recipient or participant in any assistance under a [Section] 7(a) program, including the PPP, is ineligible for a loan[,]" and to "take any and all actions determined to be necessary or desirable with respect to [Section 7(a)] loans."  85 Fed. Reg. at 33,011-12 (citing, *inter alia*, 15 U.S.C. § 634(b)(7) and (11)).  As noted above, paragraph 634(b)(11) authorizes SBA to "make such investigations as [the agency] deems necessary to determine whether a recipient of . . . any assistance under this chapter . . . has engaged . . . in any acts or practices [constituting] a violation of any provision of this chapter[.]"  Paragraph 634(b)(7) further empowers SBA to "take any and all actions that "are necessary or desirable in . . . dealing with . . . loans made under the provisions of this chapter."  "[T]his chapter," as used in paragraphs 634(b)(7) and (11), refers to Chapter 14A of the Small Business Act, of which Section 7(a), 15 U.S.C. § 636(a), and therefore the PPP, *id.* § 636(a)(36) and (37), are a part.  *See Gateway,* 953 F.3d at 1249 ("[T]he PPP was not created as a standalone program; instead it was added into § 7(a).").  Consequently, all PPP borrowers received their loans subject to SBA's pre-existing authority to conduct investigations and take other actions to ensure borrowers' compliance with program requirements.  The Loan Review IFR made no new law simply by reminding borrowers of that consequence.

The only new rules adopted under the Loan Review IFR were "additional procedures and criteria" for exercising SBA's pre-existing investigative authority to "review whether an action by [a] borrower has resulted in its receipt of a PPP loan that did not meet program requirements."  *See*

85 Fed. Reg. at 33,012. But ordinarily "changes to procedural rules do not raise retroactivity concerns because they regulate secondary rather than primary conduct." *Blaz v. Belfer*, 368 F.3d 501, 505 (5th Cir. 2004) (citing *Landgraf v. USI Film Prod.*, 511 U.S. 244, 275 (1994)). To be sure, even new procedural rules can have a retroactive effect in particular cases if they "impair rights a party possessed when [it] acted." *Germain v. US Bank Nat'l Ass'n as Tr. for Morgan Stanley Mortg. Loan Tr. 2006-7*, 920 F.3d 269, 274-75 (5th Cir. 2019); *Blaz*, 368 F.3d at 503; *see Landgraf*, 511 U.S. at 275 n.19. But that is not the situation here. As explained, when Plaintiffs took out their PPP loans, they had *no right* to loan forgiveness without further examination of their eligibility.

Additionally, whether SBA applied the Loan Review IFR retroactively or not is not of consequence to Plaintiffs' claims. If SBA had instead relied directly on paragraph 636m(a)(10)'s definition of "eligible recipient," and its authority under the Small Business Act, to investigate Plaintiffs' loan-forgiveness eligibility, the result would have been the same, as the CARES Act does not require SBA to grant loan forgiveness to borrowers found ineligible. Thus, reliance on the Loan Review IFR to reach that same result, rather than the statutes, could amount at most to harmless error, requiring that SBA's decision still be upheld. *See* 5 U.S.C. § 706 (in an APA case the court must take "due account . . . of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 406-10 (2009); *Worldcall Interconnect, Inc. v. FCC*, 907 F.3d 810, 818-19 (5th Cir. 2018).

## B. Plaintiffs' Contention That They Were Each Induced To Obtain A PPP Loan Is Unavailing

Plaintiffs' averment that they were induced to take out PPP loans by the CARES Act's loan forgiveness provisions, all to their detriment (Compl. ¶¶ 27, 33), sounds in equitable estoppel. *See United States v. Bloom*, 112 F.3d 200, 205 (5th Cir. 1997) (listing elements). The Supreme Court has categorically held, however, that the Government cannot be estopped from denying a claim for payment of public money that is not otherwise permitted by law, *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 426-33 (1990), because the Appropriations Clause, U.S. Const. art. I, § 9,

cl. 7, requires that "public funds be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents[.]" *Id.* at 428. "When federal funds are involved, the judiciary is powerless to uphold a claim of estoppel because such a holding would encroach upon the appropriation power granted exclusively to Congress by the Constitution." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 387 (5th Cir. 2005).

Were estoppel to prevent SBA from denying Plaintiffs forgiveness, the result would be an expenditure of public funds (to make good on SBA's guarantee of Plaintiffs' PPP loans) that Congress has not authorized. *Richmond* described estoppel under such circumstances as a constitutional "impossibility." 496 U.S. at 430; *see also Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385, 386 (1947) (admonishing that "not even the temptations of a hard case" can absolve a court of its "duty . . . to observe the conditions defined by Congress for charging the public treasury").

Moreover, even assuming that estoppel could lie against the Government under any circumstances—a question that neither the Supreme Court nor the Fifth Circuit has resolved, *see Richmond*, 496 U.S. at 421-23; *Knapp v. USDA*, 796 F.3d 445, 461 (5th Cir. 2015)—a party seeking to estop the Government would have to meet a "very high" burden, *Knapp*, 796 F.3d at 461. In addition to the traditional elements of estoppel, the litigant would have to show, at a minimum, that the Government engaged in "affirmative misconduct," such as intentional misrepresentation or concealment of material facts. *Bloom*, 112 F.3d at 205; *see also Robertson-Dewar v. Holder*, 646 F.3d 226, 229 (5th Cir. 2011); *Moosa v. INS*, 171 F.3d 994, 1004 (5th Cir. 1999). Yet the Complaint does not allege that SBA (or Plaintiffs' lender) intentionally misled either Plaintiff into believing that, if it took out a PPP loan, its eligibility for loan-forgiveness could not thereafter be questioned.

Further, Plaintiffs have not even shown "that the traditional elements of an estoppel are present," *Heckler v. Cmty. Health Servs. of Crawford Cnty. Inc.*, 467 U.S. 51, 61 (1984) because

they have not established that Plaintiffs relied on representations by SBA or their lender "to [Plaintiffs'] substantial injury." *Robertson-Dewar*, 646 F.3d at 229.  In April 2020, each Plaintiff received "an immediate benefit," *see Heckler*, 467 U.S. at 61, in the form of a Government-backed, low-interest PPP loan at a time of "crisis," *Ramey & Schwaller*, 71 F.4th at 258.  *See* First PPP IFR, 85 Fed. Reg. at 20,813 (interest rate on PPP loans is one percent).  Plaintiffs "cannot raise an estoppel without" proof that they "will be significantly worse off" now, if required to work out a repayment plan with SBA,[14] "than if" each Plaintiff "had never obtained" its loan in the first place.  *Heckler*, 467 U.S. at 62-63.

### III.    ANY RELIEF IN THE NATURE OF AN INJUNCTION MUST BE DENIED

The Court should simply reject Plaintiffs' APA claim on the merits.  Should the Court find it necessary to reach the issue, the appropriate remedy, if the Court were to find Plaintiffs' APA claim has merit, would be—as the Supreme Court has recently reiterated—"to remand the matter back to" SBA "for further consideration of" the loan forgiveness applications disputed here.  *Calcutt v. FDIC*, 598 U.S. 623, 629 (2023) (*per curiam*); *see id.* (citing, *inter alia*, *Gonzales v. Thomas*, 547 U.S. 183, 187 (2006) (*per curiam*), as requiring lower courts to "appl[y] the ordinary remand rule").

Adherence to "the ordinary remand rule," *id*., is especially important here, because of 15 U.S.C. § 634(b)(1), a Small Business Act provision  "providing that 'no . . . injunction . . . shall be issued against the Administrator or his property.'"  *In re Hidalgo Cty. Emergency Serv. Found.*, 962 F.3d 838, 840 (5th Cir. 2020) (quoting 15 U.S.C. § 634(b)(1)).  Plaintiffs' Prayer for Relief does not respect circuit precedent applying the statute.  The Fifth Circuit in *Hidalgo*, rejecting a claim seeking a preliminary injunction regarding SBA's PPP administration, adhered to prior decisions under which "all injunctive relief directed at the SBA is *absolutely prohibited*."  *Id.* (quoting *Enplanar,*

---

[14]  "SBA may agree to extend the maturity of a loan for up to 10 years beyond its original maturity if the extension will aid in the orderly repayment of the loan."  13 C.F.R. § 120.531; *see also* Paycheck Protection Program Flexibility Act, Pub. L. No. 116-142, § 2, 134 Stat. 641 (2020).

*Inc. v. Marsh*, 11 F.3d 1284, 1290 n.6 (5th Cir. 1994) (emphasis added by Court); *see id.* at n.2 (citing *Valley Constr. Co. v. Marsh*, 714 F.2d 26, 29 (5th Cir. 1983), and *Expedient Servs., Inc. v. Weaver*, 614 F.2d 56, 58 (5th Cir. 1980), as rejecting injunctive relief claims against SBA under the statute); *see also Romeo v. United States*, 462 F.2d 1036, 1037-38 (5th Cir. 1972) ("Congress has, to some extent, waived immunity for the SBA by enacting 15 U.S.C. § 634(b)(1)," such that borrower's "suit is barred insofar as he seeks injunctive relief in the nature of specific performance" of SBA loan approval agency withdrew after uncovering borrower was ineligible).

Here, Plaintiffs seek remedies far broader than an "ordinary remand" under *Calcutt* and prior decisions. Instead, Plaintiffs seek remedies incompatible with Section 634(b)(1), and the Court should dismiss the request for those remedies as a matter of law. The statutory prohibition on injunctions against SBA warrants careful attention, given that it addresses the scope of the waiver of sovereign immunity as to SBA, and hence concerns this Court's subject-matter jurisdiction. *See, e.g., Willoughby v. United States ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479-80 (5th Cir. 2013).

To be sure, a "declaratory judgment" may be a "proper remedy" in an action against SBA, but the Fifth Circuit has confirmed that Section 634(b)(1) does not tolerate such relief in "a case where the request for declaratory judgment is a shallow subterfuge for an unavailable injunction." *Valley Constr.*, 714 F.2d at 29; *see* 28 U.S.C. § 2201(a). Here, although Plaintiffs have styled some of their requested relief as merely declaratory, when Plaintiffs' labels are disregarded, it is apparent that they seek an "unavailable injunction," given that Plaintiffs ask the Court to "declare" various propositions, "*and*" to then "*instruct*[]" SBA how to implement those propositions in further proceedings as to Plaintiffs' forgiveness applications. *See* Compl., Prayer for Relief, ¶¶ (a), (b), (d), (e) (emphasis added). This case thus resembles *Expedient*, 614 F.2d at 58, where the "complaint as a whole" showed the challenger impermissibly sought "relief equivalent to injunctive relief" against

SBA.  *Cf. Abbott v. Perez*, 138 S. Ct. 2305, 2319 (2018) (whether challenged order ranked as "injunction" for purposes of Supreme Court jurisdictional statute hinges on "practical effect," and "the label attached to an order is not dispositive").

In that regard, in the first two paragraphs of the Prayer for Relief, Plaintiffs seek orders that would "[d]eclare that" SBA's particular loan-forgiveness "decisions" as to Plaintiffs are invalid, Compl., Prayer for Relief, ¶ (a), and, that would also "[d]eclare that" the loan-review regulations underpinning those SBA decisions are invalid, *id.*, ¶ (b).  Plaintiffs' evident objective in seeking such declarations in tandem with their remedial request in Paragraph (d) for a "[r]emand . . . to the SBA with instructions to issue new . . . decisions" abiding by the declaration sought in Paragraph (a), is to have this Court predetermine the outcome of the remand proceedings before the agency.  Like an injunction, declaratory judgments coupled to a "[r]emand . . . with instructions" from the Court to the agency would operate prospectively to alter SBA's future conduct by providing a conclusive determination that Defendants may not take certain actions regarding the instant Plaintiffs.[15]  The declaration sought thus would conclusively specify the outcome of further proceedings on Plaintiffs' forgiveness applications, and so would be the functional equivalent of an injunction against SBA by telling the agency "what to do or not to do" as to those applications.  Such direction of SBA conduct is what Section 634(b)(1) prohibits.  For example, such relief would be akin to the order held improper in *Romeo*, 462 F.2d at 1037-38, where the borrower sought a judicial requirement of "specific performance" by SBA, namely, an order directing SBA to reach a particular outcome (approval) for a particular loan the agency had withdrawn on ineligibility grounds.

---

[15]  *Compare Nken v. Holder*, 556 U.S. 418, 428 (2009) (injunction "is a means by which a court tells someone what to do or not to do"), *with MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (proper declaration provides "specific relief through a decree of a conclusive character") (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)); *cf. Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155 (1963) (suggesting, for purposes of statute requiring three-judge District Court hear action for "injunction" against constitutionally-challenged federal statute, that declaration would rank as injunction if it would "paralyze totally the operation of an entire regulatory scheme").

The vacatur remedy Plaintiffs seek in Paragraph (c) is also unavailable. Compl., Prayer for Relief, ¶ (c); *see Driftless Area Land Convervancy v. Valcq*, 16 F.4th 508, 522 (5th Cir. 2021) ("[v]acatur is the act of annulling or setting aside") (cleaned up). Because Section 634(b)(1) prohibits all relief against SBA that is "injunctive in nature," it also prohibits an order that would "set[ ] aside" an SBA decision. *Expedient Servs.*, 614 F.2d at 57-58. Defendants also respectfully submit, irrespective of Section 634(b)(1)—and although the Fifth Circuit has held otherwise, *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022)—that the APA does not empower courts to "set aside" agency rules, in the sense of nullifying or revoking them, in any context, for essentially the reasons noted by Justice Gorsuch in *United States v. Texas*, 143 S. Ct. 1964, 1980-85 (2023) (Gorsuch, J., concurring in the judgment, joined by Thomas and Barrett, JJ.).

## CONCLUSION

For the reasons stated above, this Court should grant Defendants' motion for summary judgment.

Dated:  October 30, 2023                                                 Respectfully submitted,

                                                                                          LEIGHA SIMONTON
                                                                                          *United States Attorney*

Of Counsel:

                                                                                          s/ *Tami C. Parker*
JAMES J. GILLIGAN                                              Tami C. Parker
*Special Litigation Counsel*                                 *Assistant United States Attorney*
INDRANEEL SUR                                                  Burnett Plaza, Suite 1700
*Trial Attorney*                                                    801 Cherry Street, Unit # 4
Civil Division, Federal Programs Branch        Fort Worth, TX 76102-6882
U.S. Department of Justice                            Texas Bar No. 24003946
P.O. Box 883                                                       Telephone: 817-252-5200
Washington, D.C.  20044                              Facsimile:  817-252-5458
Telephone:   (202) 616-8488                        E-mail: tami.parker@usdoj.gov
Facsimile: (202) 616-8470
E-mail: Indraneel.Sur@usdoj.gov                 *Attorney for Defendants*

## CERTIFICATE OF SERVICE

On October 30, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

s/ *Tami C. Parker*
Tami C. Parker
*Assistant United States Attorney*