IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SSCP MANAGEMENT, INC.;<br>and ATHR MANAGEMENT COMPANY,<br>INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA<br>CASILLAS GUZMAN, in her official<br>capacity as Administrator of the Small<br>Business Administration,<br><br>    Defendants. | Civil Action No. 3:22-CV-02807-X |

**DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFFS' SUMMARY JUDGMENT MOTION**

Dated:  December 5, 2023

Of Counsel:

JAMES J. GILLIGAN
*Special Litigation Counsel*

INDRANEEL SUR
*Trial Attorney*
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044

Phone:   (202) 514-8488
Fax No.: (202) 616-8470
Indraneel.Sur@usdoj.gov

LEIGHA SIMONTON
*United States Attorney*

Tami C. Parker
*Assistant United States Attorney*
Burnett Plaza, Suite 1700
801 Cherry Street, Unit # 4
Fort Worth, TX 76102-6882
Texas Bar No. 24003946
Telephone: 817-252-5200
Facsimile:  817-252-5458
E-mail: tami.parker@usdoj.gov

*Attorney for Defendants*

**TABLE OF CONTENTS**

ARGUMENT...................................................................................................................2

    A.    SBA Cannot Forgive a PPP loan Under the CARES Act for which the borrower was never eligible. ................................................................................................2

    B.    Plaintiffs' suggested policy concerns provide no basis for overturning SBA's authoritative and consistent interpretation of the CARES Act. ......................................7

    C.    SBA took no retroactive action here. ..............................................................8

    D.    The limited waiver of sovereign immunity as to SBA forecloses plaintiffs' Bid for relief functionally equivalent to an injunction.........................................................8

CONCLUSION ..............................................................................................................10

There is no dispute that Plaintiffs lacked initial eligibility for the PPP loans they obtained.[1] The only disputed question is whether the CARES Act is properly understood to deny Plaintiffs forgiveness of those loans based on that initial lack of eligibility. On that point the statute is unambiguous: A lender's speedy decision to issue a loan, relying on the borrower's self-certifications concerning PPP eligibility, cannot preclude SBA, at the forgiveness stage, from reaching a different conclusion about that borrower's eligibility. By locating the PPP within SBA's pre-existing loan authority in Section 7(a), the CARES Act makes SBA responsible for continuing to perform its auditing, investigating, and other Section 7(a) functions (including, for example, implementing the requirement that each loan be of sufficiently sound value to reasonably assure repayment). And where SBA learns at the forgiveness stage that a PPP borrower lacked initial eligibility under Section 7(a), or the CARES Act, or SBA's rules authoritatively implementing those statutes, SBA cannot grant that borrower forgiveness of the PPP loan.

Plaintiffs nevertheless rely on isolated provisions of the statute—chiefly, the definition of a "covered loan," which is "a loan *guaranteed under* section 636(a)(36) of this title." 15 U.S.C. § 636m(a)(1) (emphasis added). Plaintiffs' effort to depict their argument as consistent with the statute's "plain language" fails. Pls. Br. 2. That definition cannot be severed from context, which necessarily includes the panoply of Section 7(a) provisions that apply to PPP loans, and the regulations implementing those provisions. After all, Congress enacted the PPP as an amendment to Section 7(a), not as a "standalone" program. Under Plaintiffs' position, any borrower that obtained a PPP loan would be entitled to forgiveness, no matter how incompatible that loan was with Section 7(a)—an interpretation that would improperly undercut the CARES Act by disabling SBA from denying forgiveness to such a borrower.

Contrary to Plaintiffs' contention, SBA has correctly respected the statutory text and structure, and the agency's attention to context has not subordinated the CARES Act to any

---

[1] Defined terms have the meaning set forth in Defendants' Brief in Support of their Summary Judgment Motion, Doc. 30 ("Def. Br."). Citations of the form "Pls. Br. __" are to Plaintiffs' Brief in Support of Motion for Summary Judgment, Doc. 28. Internal citations and quotation marks are omitted throughout this brief unless noted.

Defendants' Brief in Opposition to Plaintiffs'
Summary Judgment Motion – Page 1

"bureaucratic policy goal[s]."  Pls. Br. 18.  Plaintiffs thus have not carried their burden to show SBA's denial of loan forgiveness was invalid.  And, in any event, Plaintiffs' request for relief in the nature of an injunction cannot be reconciled with Fifth Circuit precedent.

## ARGUMENT

**A.    SBA Cannot Forgive a PPP loan Under the CARES Act for which the borrower was never eligible.**

*1.* Plaintiffs' assertion that they are heeding the "plain text" rings hollow, as they largely ignore the relationship the CARES Act established between the PPP and Section 7(a).  Pls. Br. 15. After all, the PPP "was not created as a standalone program"; instead, it was added into Section 7(a); although the PPP relaxed several general eligibility requirements.  *See* CARES Act, § 1102, 134 Stat. at 286 (amending § 7(a)).  *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1249 (11th Cir. 2020) (quoting, with "*see also*," 15 U.S.C. § 636(a)(36)(B), the CARES Act provision under which SBA "may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection [§ 7(a)].").  That is, as the Second Circuit, speaking through U.S. Circuit Judge Michael Park explained, the PPP "was added into the existing § 7(a) program, which subjects it to existing conditions and regulations, as well as existing SBA authority."  *Pharaohs GC, Inc. v. U.S. Small Business Admin.*, 990 F.3d 217, 227 (2d Cir. 2021) (quoting *Gateway*, 983 F.3d at 1256).  So the "statutory context" of the PPP is, "specifically, its foundation in the Small Business Act's 7(a) loan program."  *Pharaohs GC*, 990 F.3d at 226.  And "'[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'"  *Id.* (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

As explained in Defendant's Motion for Summary Judgment (Def. Br. 16-17), among those "existing conditions and regulations" is Section 7(a)'s "sound value" requirement, which mandates that "[a]ll loans made under [§ 7(a)] shall be of such sound value or so secured as reasonably to assure repayment."  15 U.S.C. § 636(a)(6); *Gateway*, 983 F.3d at 1256-57; *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 424 (2d Cir. 2022)*.*  And in part to promote adherence to that requirement and others, in the Loan Review IFR, 85 Fed. Reg. 33,010 (June 1, 2020), SBA noted the necessity

Defendants' Brief in Opposition to Plaintiffs'
Summary Judgment Motion – Page 2

of drawing on its Section 7(a) auditing and investigative powers, at the forgiveness stage, to inquire into initial eligibility and to deny forgiveness where a borrower lacked initial eligibility for a PPP loan because the loan did not comply with Section 7(a) or the CARES Act. Def. Br. 16-18.[2] Denying forgiveness of a loan for which a borrower was not initially eligible also respects the nature of the PPP, which is a loan program, *not* a grant program, in which forgiveness "is neither automatic nor guaranteed." *Springfield Hosp.,* 28 F.4th at 424; Def. Br. 18-20.

Plaintiffs' position is irreconcilable with the PPP's "foundation in the Small Business Act's 7(a) loan program," *Pharaohs GC*, 990 F.3d at 226, and indeed Plaintiffs largely proceed as though that foundation does not exist. Plaintiffs entirely decline to cite or quote the "sound value" requirement in 15 U.S.C. § 636(a)(6). Plaintiffs also decline to cite or quote the investigatory authority in 15 U.S.C. § 634(b)(11). Indeed, Plaintiffs seem to deny that provision's existence altogether when they assert that SBA lacks authority to perform a forgiveness-stage "forensic audit" of eligibility. Pls. Br. 2; *see* 15 U.S.C. § 634(b)(11) (authorizing SBA to "make such investigations as" it "deems necessary to determine whether a recipient of or participant in any assistance under this chapter or any other person has engaged . . . in any acts . . . which constitute . . . . a violation of any provision of this chapter, or of any rule or regulation under this chapter").

*2.* Plaintiffs also fail to shore up their Complaint's flagship contention about the definitions of "eligible recipient" as "the recipient of a covered loan," *see*, *e.g.*, 15 U.S.C. § 636m(a)(10), and, in turn, of a "covered loan," defined as "a loan *guaranteed under* section 636(a)(36) of this title." § 636m(a)(1) (emphasis added). *See* CARES Act § 1106(a)(1) ("covered loan" is a "loan *guaranteed under* paragraph (36) of section 7(a) of the Small Business Act (15 U.S.C. 636(a)), as added by

---

[2] To recap: SBA grounded the Loan Review IFR, *see* 85 Fed. Reg. at 33,011-12 (carryover paragraph), on the CARES Act and on the Small Business Act provisions authorizing SBA to conduct audits and investigations, 15 U.S.C. § 634(b)(11) (*see* 85 Fed. Reg. at 33,011-12, first sentence), and to take such other actions as may be necessary or desirable, *see* 15 U.S.C. § 634(b)(6), (7), to ensure compliance with Section 7(a) rules and regulations (*see* 85 Fed. Reg. at 33,011-12, third sentence). Further, "under [S]ection 7(a)," SBA noted, it had authority "to make loans in cooperation with lenders through agreements to participate on a deferred (guaranteed) basis," a statement for which the agency cited 15 U.S.C. § 636(a)—necessarily including the "sound value" mandate in 15 U.S.C. § 636(a)(6). *See* 85 Fed. Reg. at 33,012 (second sentence). SBA also noted that 13 C.F.R. 120.524 describes when the agency would be "released from liability on a loan guarantee" for lender noncompliance. *See* 85 Fed. Reg. at 33,012 (fourth sentence).

section 1102" of the CARES Act) (emphasis added).  In contrast, in the Loan Review IFR and in the proceedings on Plaintiffs' forgiveness applications, SBA has consistently based its position on the whole text and structure, including the PPP's "foundation in the Small Business Act's 7(a) loan program."  *Pharaohs GC*, 990 F.3d at 226.

In this case, SBA's brief turned to the construction of 15 U.S.C. § 636m(a)(1) principally to expose the errors in Plaintiffs' approach, which impermissibly takes that definition in isolation.  Viewed in context, SBA explained, the word "under" in 15 U.S.C. § 636m(a)(1) functions like the word "under" in such statutes as 8 U.S.C. § 1229b(d)(1)(A), per *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), thereby confining the term "covered loan" *for forgiveness purposes* to a loan that is guaranteed *in accordance with* Section 7(a) and its implementing regulations.  A loan that issued in violation of Section 7(a) and its implementing regulations is not, for forgiveness purposes, one guaranteed in accordance with Section 7(a), and it therefore is not a "covered loan" within 15 U.S.C. § 636m(a)(1).  Def. Br. 22-24 (citing, *inter alia*, *Ardestani v. INS*, 502 U.S. 129, 135-36 (1991)); *see also Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 413-14, 417-19 (2012) ("patent information" brand "*submitted . . . under*" two statutory subsections, 21 U.S.C. § 355(j)(5)(C)(ii)(I) (emphasis added), "most naturally refers to patent information provided as part of the 'comprehensive scheme of regulation' premised on those subsections") (citing *Ardestani*, 502 U.S. at 135, and *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 667 (1990)).  Plaintiffs include the key phrase "guaranteed under" in their quotation of 15 U.S.C. § 636m(a)(1) (Pls. Br. 16) but offer no argument about it.  Pls. Br. 15-21.  That omission exposes the emptiness of their assertion that their position reflects "the plain and unambiguous meaning of the statutory language."  Pls. Br. 20.

*Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33 (2008), further reinforces SBA's interpretation.  *Piccadilly* concerned a state tax exemption for any asset transfer "*under a plan confirmed* under [Chapter 11]" of the Bankruptcy Code. 11 U.S.C. § 1146(a) (emphasis added) (as then existing).  Florida argued, in line with SBA's position here, that "the word 'under' in 'under a plan confirmed'" meant "subject to," "'with the authorization of' or 'inferior or subordinate' to its referent, here the confirmed plan."  554 U.S. at 39-40.  Piccadilly countered that

"under" is "just as easily read to mean 'in accordance with.'" *Id.* at 40.  The Court, speaking through Justice Thomas, noted the parties had "credible interpretations," yet ranked Florida's reading as "the better one" and "clearly the more natural." *Id.* at 41; *see also, e.g.*, *Caraco*, 566 U.S. at 417-19.  Ultimately, instead of deciding the case exclusively via definitions of "under,"[3] the Court in *Piccadilly* assumed, *arguendo*, "that the language of" the disputed provision "is facially ambiguous," and went on to "resolve[]" the case "in Florida's favor" based on "the provision's placement within" the Code "and applicable substantive canons" of construction.  *See id.* at 41-53.

Similarly here, *if* the Court were to decide based exclusively on 15 U.S.C. § 636m(a)(1), then SBA should prevail as having the "better" and "clearly the more natural" reading—because an SBA-guaranteed loan obtained in violation of Section 7(a) is not "natural[ly]" classified as a loan guaranteed "with the authorization of" Section 7(a), since such a classification would require, inexplicably, ignoring the violation.  And, *if* instead the Court were to follow the analysis in *Piccadilly*, then SBA should also prevail, given that the context of the CARES Act and its "placement within," and relationship to, Section 7(a) forecloses Plaintiffs' notion that every entity that obtained a PPP loan is eligible for forgiveness.

Again, the context Plaintiffs largely ignore is the CARES Act and the Section 7(a) provisions providing the PPP's foundation.  For example, no CARES Act provision dispenses with the "sound value" requirement or SBA's auditing and investigative responsibilities.  So Plaintiffs' position, which would preclude SBA from denying forgiveness to any PPP borrower—including a borrower whose loan was predicated on false statements as to eligibility, or otherwise issued in violation of the "sound value" and other requirements—cannot be correct.  That is, even recognizing that, as in *Piccadilly*, there can be multiple "credible interpretations" of a phrase tied to the word "under," that alone "does not render the word . . . whenever it is used, ambiguous, particularly where all but one

---

[3]  The Court noted that "the *American Heritage Dictionary* 1395 (1976) provides 15 definitions" of the "term 'under.'" *Piccadilly*, 554 U.S. at 40.  The current online version of the *American Heritage Dictionary* lists 17 definitions of the term "under" as a preposition. https://ahdictionary.com/word/search.html?q=under (last accessed Nov. 28, 2023).

of the meanings is ordinarily eliminated by context." *Carcieri v. Salazar*, 555 U.S. 379, 391 (2009). The context here "eliminate[s]" Plaintiffs' position. *Id.*[4]

Similarly mistaken is Plaintiffs' contention that, in the Loan Review IFR, SBA erred in reasoning that eligibility for forgiveness hinged on whether a borrower was "an 'eligible recipient' under 15 U.S.C. 636(a)(36)(A)(iv) and rules and guidance available at the time of the borrower's loan application." 85 Fed. Reg. 33,010, 33,012 (June 1, 2020). An "eligible recipient" for loan-origination purposes is defined as an entity "eligible to receive a covered loan" (*see* 15 U.S.C. § 636(a)(36)(A)(iv)), whereas an "eligible recipient" for loan-forgiveness purposes is defined as a "recipient of a covered loan" (*see* § 636m(a)(10)). But, like a "covered loan" defined at the forgiveness stage as a loan "guaranteed under" § 636(a)(36) (15 U.S.C. § 636m(a)(1)), a "covered loan" is defined at the origination stage as one "made under," that is, made in accordance with the provisions of, § 636(a)(36) (*id.* § 636(a)(36)(A)(ii)). The definitions of "covered loan" at both stages thus necessitate inquiry into the loan's compatibility with Section 7(a) and its implementing regulations. And a loan that violates those requirements is no more a covered loan "made under" § 636(a)(36) than it is a covered loan "guaranteed under" § 636(a)(36). Accordingly, an entity that obtained a PPP loan for which it was not eligible under those requirements by definition did not receive a "covered loan." The Loan Review IFR therefore correctly stated that the agency needs to determine whether a borrower was "eligible to receive a covered loan" within the meaning of § 636(a)(36)(A)(ii) and (iv) in order to determine whether that borrower was a "recipient of a covered loan" under § 636m(a)(10) eligible for loan forgiveness.

---

[4] SBA's position that a PPP loan is not properly forgiven when the borrower lacked initial eligibility simply would mean, upon SBA's denial of forgiveness, that the borrower would begin making payments on the loan amount consistent with the promissory note between borrower and lender. The unforgiven loan would remain an "obligation[] of the borrower." *Cf.* SBA Procedural Notice Control No. 5000-20078 at 3 (effective Jan. 15, 2021) (describing similar outcome in the event of "Excess Loan Amount Errors"). And, if a PPP borrower were to default, SBA, consistent with its regulation, *see* 13 C.F.R. 120.520(a)(1), and with the pre-existing agreement between the agency and the lender, would purchase the guaranty—meaning the lender would be protected despite the default. Thus, when SBA does not forgive a PPP loan because, due to the borrower's lack of initial eligibility, that loan is not "guaranteed under" Section 7(a) *for purposes of forgiveness*, a default on such a loan would not result in a loss of the loan principal for the lender, because SBA still would honor the guarantee, consistent with its regulations and lender agreement.

Nor do the interpretive maxims Plaintiffs invoke compensate for their failure to account for the structure of the PPP as located within Section 7(a).  For example, although Plaintiffs purport to avoid superfluity (Pls. Br. 18), for the reasons summarized above, it is Plaintiffs' position that would bypass many provisions of Section 7(a) and thus render them superfluous as to PPP loans.

**B.**   **Plaintiffs' suggested policy concerns provide no basis for overturning SBA's authoritative and consistent interpretation of the CARES Act.**

Plaintiffs also err in contending that the Loan Review IFR improperly sought "to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms," (*see* Pls. Br. 18 (citing *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 325 (2014)), and instead fail to read the terms of the CARES Act and Section 7(a) and its implementing regulations "in their context and with a view to their place in the overall statutory scheme," *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007); *see* Antonin Scalia & Bryan A. Garner, *Reading Law* 167 (2012) ("Whole-Text Canon" "calls on" court "to consider the entire text, in view of its structure and of the physical and logical relation of its many parts," as "[c]ontext is a primary determinant of  meaning.").  In relying on text and structure, SBA has not advocated a construction based on freewheeling conceptions of "policy goals."[5]

It is Plaintiffs who impermissibly advance broad generalizations about public policy rather than "the structure of the statute and its other provisions."  *Culbertson v. Berryhill*, 139 S. Ct. 517, 522 (2019); Def. Br. 26.  For example, Plaintiffs assert that "Congress designed" the PPP "as a massive government intervention in the economy to expeditiously give employers the liquidity to keep people working and getting paid" amidst the COVID-19 "pandemic-era shutdowns," and on that basis Plaintiffs argue that PPP loans that issued upon "good faith" "appl[ications]" and "approv[als]" by borrowers and lenders preclude SBA inquiry into eligibility at the forgiveness

---

[5]  Although SBA's argument is based on text and structure, not policy concerns, SBA notes that a permissible construction at the second step of *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), "reasonabl[y] accommodat[es] . . . conflicting policies that were committed to the agency's care by the statute." *Id.*, 467 U.S. at 845 (quoting *United States v. Shimer*, 367 U.S. 374, 382 (1961)); *Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*, 968 F.3d 454, 460 (5th Cir. 2020); *cf.* Antonin Scalia, *Judicial Deference to Administrative Interpretations of Law*, 1989 Duke L.J. 511, 515 ("Under our democratic system, policy judgments are not for the courts but for the political branches; Congress having left the policy question open, it must be answered by the Executive.").

stage.  Pls. Br. 1  But the "best evidence of" congressional "purpose is the statutory text." *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991).  No provision of the statute makes "good faith" adherence to the CARES Act a sufficient ground for entitlement to forgiveness of a PPP loan.

Furthermore, although Plaintiffs may be correct in some sense that "expeditiously" providing "employers . . . liquidity" was *one* objective of the CARES Act, "no legislation pursues its purposes at all costs," and "[d]eciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice." *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) (*per curiam*).  By locating the PPP within Section 7(a) except insofar as the CARES Act expressly delineated otherwise, and by leaving in place the "sound value" requirement and the other Section 7(a) provisions underpinning the Loan Review IFR, Congress struck a particular balance between disbursing loans swiftly and preserving fiscal integrity.  Plaintiffs' public policy arguments supporting a different balance are not the proper basis for an APA claim, and are "more appropriately addressed to Congress." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 277 (2014); *see  Dodd v. United States*, 545 U.S. 353, 359 (2005).

**C.      SBA took no retroactive action here.**

Plaintiffs repeat their conclusory characterization of SBA's forgiveness-stage inquiry into loan eligibility as "*ex post facto*" action, but present no argument in their brief to support that characterization (as distinct from their statutory interpretation argument).  Pls. Br. 1, 10.  Insofar as Plaintiffs still seek to assert any distinct claim concerning retroactivity, such a claim fails for the reasons SBA set forth in its brief.  Def. Br. 26-31.

**D.      The limited waiver of sovereign immunity as to SBA forecloses plaintiffs' Bid for relief functionally equivalent to an injunction.**

In any event, if the Court were to find an APA violation, the appropriate remedy would be to remand to SBA for further proceedings, which would be consistent with 15 U.S.C. § 634(b)(1), the specific statutory restriction on relief in the nature of an injunction against SBA.  Def. Br. 31-34. Plaintiffs do not acknowledge the ordinary remand rule, *see* Pls. Br. 21-23, but that rule long has applied to a wide range of APA cases. *See, e.g., BizCapital Bus. & Indus. Dev. Corp. v. Comptroller of the Currency*, 467 F.3d 871, 873 (5th Cir. 2006) (citing, *inter alia*, *Camp v. Pitts*, 411 U.S. 138,

143 (1973)).  That traditional remedy suffices even where a court determines that an agency's decision cannot be upheld: "If a reviewing court agrees that the agency misinterpreted the law, it [must] set aside the agency's action *and remand the case*—even though the agency . . . might later, in the exercise of its lawful discretion, reach the same result for a different reason."  *FEC v. Akins*, 524 U.S. 11, 25 (1998) (emphasis added); *see Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1907-08 (2020) ("court may remand" for agency to either "offer a fuller explanation of the agency's reasoning *at the time of the agency action*" or "'deal with the problem afresh' by taking *new* agency action").  Rather than acknowledge the availability of remand, Plaintiffs reiterate their bid for sweeping relief—including an order invaliding any SBA regulation "purporting to authorize" agency review of PPP eligibility at the forgiveness stage (*see* Pls. Br. 23, Item (b)), and orders that would predetermine the outcome of a remand by decreeing that the loan of each Plaintiff "is forgiven" (Pls. Br. 23, Items (c), (d)).  But Plaintiffs do not cite 15 U.S.C. § 634(b)(1) or any of the numerous Fifth Circuit precedents carefully adhering to it, which foreclose orders against SBA that are functionally equivalent to injunctions, such as orders requiring specific performance of disputed agreements.

Instead, Plaintiffs err in relying on inapposite cases concerning such agencies as the Departments of Labor and of Education, none of which grappled with the critical deficiency in Plaintiffs' bid for relief functionally equivalent to an injunction against SBA.  Pls. Br 21-23.  There is no license for Plaintiffs to ignore the SBA-specific statute, which, after all, restricts the extent to which sovereign immunity is waived as to SBA, and thus implicates this Court's subject-matter jurisdiction.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (federal sovereign immunity is "jurisdictional in nature").  And "[a]ny ambiguities in the statutory language" in a waiver of sovereign immunity "are to be construed in favor of immunity, so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires."  *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (citation omitted).

**CONCLUSION**

For the reasons stated above and in Defendants' opening brief in support of their summary judgment motion, this Court should deny summary judgment to Plaintiffs and instead grant it to Defendants.

Dated:  December 5, 2023

Of Counsel:

JAMES J. GILLIGAN
*Special Litigation Counsel*
INDRANEEL SUR
*Trial Attorney*
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044
Telephone:  202-616-8488
Facsimile:   202-616-8470
E-mail: Indraneel.Sur@usdoj.gov

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

s/ *Tami C. Parker*
Tami C. Parker
*Assistant United States Attorney*
Burnett Plaza, Suite 1700
801 Cherry Street, Unit # 4
Fort Worth, TX 76102-6882
Texas Bar No. 24003946
Telephone: 817-252-5200
Facsimile:  817-252-5458
E-mail: tami.parker@usdoj.gov

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

On December 5, 2023, I electronically submitted the foregoing document with the clerk

of court for the U.S. District Court, Northern District of Texas, using the electronic case filing

system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record

electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

s/ *Tami C. Parker*
Tami C. Parker
*Assistant United States Attorney*